ARTHUR DRUG STORES, INC. *v.* LESLIE REALTY, INC.

BALDWIN, O'SULLIVAN, WYNNE, DALY and ALCORN, Js.

Argued February 2—decided April 12, 1955

*Willis G. Parsons, Jr.,* with whom was *Willis G. Parsons,* for the appellant (defendant).

*Joseph E. Klau,* with whom, on the brief, was *Alfred F. Wechsler,* for the appellee (plaintiff).

DALY, J.  The plaintiff brought this action to recover damages for breach of an agreement contained in a lease.  The case was tried to the court and judgment was rendered for the plaintiff.  The defendant has appealed.

The defendant seeks to correct the finding by incorporating six paragraphs of the draft finding. They are not in proper form because they purport to be recitals of testimony of real estate experts. Findings of fact should be confined to statements of operative or ultimate facts and should not recite evidence or evidential matters.  Practice Book § 406. The finding is not subject to correction.

The facts may be summarized as follows: The defendant owns, in the town of Manchester, a parcel of

land bounded on the east by Main Street, on the north by St. James Street, and on the south by Forest Street. A business block stands on the property. On May 25, 1948, the defendant leased to the plaintiff, for a term of ten years from October 1, 1948, for drugstore purposes, the most northerly store in the block. The plaintiff entered into possession and, subsequent to January 1, 1949, paid a total monthly rental of $600 under the terms of the lease. There was included in the lease a right, in favor of the plaintiff and its customers, to use for parking purposes a strip of land, having a frontage of 100 feet on Forest Street and a depth of 325 feet on Main Street.

By the terms of the lease the defendant agreed to level off this area of 32,500 square feet, "so that it can be used for parking purposes," and to cover with two inches of black top the surface of its southerly portion to a width of 75 feet on Main Street and a depth of 100 feet on Forest Street. It was also provided that "this privilege of parking shall continue as long as said Lessor does not build on the major portion of said land, and said right to park shall terminate automatically in the event of construction by said Lessor on said major portion of said premises." No building has been erected on the major portion of the parking area. The parking space provided for in and by the provisions of the lease was one of the reasons why the plaintiff removed its drugstore business from another location on Main Street, which had no parking space connected with it. The area for parking was one of the principal factors inducing the plaintiff to enter into the lease.

Entrance to and exit from the parking area was by way of Forest Street. At the time the lease was

executed, the area was not usable for parking purposes. In the spring of 1949, the defendant paid a contractor $40 to level it off. Thereafter, it was generally irregular and bumpy. Some portions were hilly. Some contained rubble. Thick vegetation extended and grew over large areas of it. Gullies ran through it. In certain seasons of the year, the earth became soft, wet and muddy, causing many cars to be mired in the area so that tow cars were used to extricate them. Such conditions also occurred during and following rainstorms. Often there were puddles and streams of water on the area. Although the plaintiff repeatedly requested the defendant to level off the entire parking area and to cover the surface of the southerly portion of it as agreed, the defendant failed to do so. The area was not suitable for parking purposes and could not, at all times of the year, be used for such purposes. The use made of the area for parking purposes involved inconvenience to the plaintiff's customers, and, up to the time of the trial, the extent of the use was far less than it would have been if the defendant had carried out its agreement.

If the defendant had improved the area, as it had agreed to do, approximately thirty-seven cars could have been parked at one time in that portion of it which the defendant had agreed to have covered with black top, and 125 cars could have been parked at one time in the remaining part. The value of the plaintiff's rights in the parking area, if it had been prepared and improved in accordance with the terms of the lease, represented 25 per cent of the $600 monthly rental.

The trial court concluded that the defendant had failed to perform its agreement with respect to the parking area, that the difference between the fair

rental value of the premises which the defendant had agreed to provide and the fair rental value of the leased premises as they actually existed from the date of occupancy to the time of trial was $60 a month, and that the plaintiff was entitled to damages of $60 a month for a period of five years, or a total of $3600.

Both parties agree that the amount of damages recoverable is the difference between the agreed rental value and the fair or reasonable market rental value of the premises as they actually existed. Although the final question resolved by the trial court was the amount of damages, the real nub of the problem was the determination of the fair or reasonable market rental value of the leased premises as they actually existed. There was evidence upon which the trial court could find, as it did, that the value of the plaintiff's rights in the parking area, if it had been improved in accordance with the terms of the lease, represented 25 per cent of $600, the monthly rental, or $150 per month. Therefore the amount of damages recoverable, on a monthly basis, is the difference between $150 and the fair or reasonable market monthly rental value of the plaintiff's limited use and enjoyment of the parking area. In finding this difference to be $60 a month, the court found that the fair or reasonable market rental value of the plaintiff's limited use and enjoyment of the parking area was $90 a month. The defendant claims that only a real estate expert could determine the market rental value and that, as the trial court did not have the opinion evidence of such an expert, it resorted to mere guess and speculation.

The determination of the facts, including the value of the plaintiff's rights in the parking area if it had been prepared and improved in accordance

with the terms of the lease and the reasonable market rental value of the plaintiff's real use and enjoyment of the parking area, was within the province of the trial court. *Ely* v. *Mason,* 97 Conn. 38, 40, 115 A. 479. There may be sets of circumstances sufficient to remove determination of a question from the realm of conjecture without the aid of positive expert opinion. *Gannon* v. *S. S. Kresge Co.,* 114 Conn. 36, 38, 157 A. 541. While the reasonable market rental value of the plaintiff's real use and enjoyment of the parking area was not established by direct evidence, the court could reasonably have determined it by inference from the other proven facts. *Anderson* v. *Gengras Motors, Inc.,* 141 Conn. 688, 693, 109 A.2d 502. The other proven facts afforded the trial court a reasonable basis for determining what part of the use and enjoyment of the parking area paid for by the plaintiff was actually had by it. The court did not indulge in conjecture or speculation. Its determination of the reasonable market rental value of the plaintiff's limited use and enjoyment of the parking area was justified.

There is no error.

In this opinion the other judges concurred.