J. RODNEY ALTMAN v. G. ALBERT HILL, HIGHWAY COMMISSIONER

INGLIS, C. J., BALDWIN, O'SULLIVAN, WYNNE and DALY, Js.

Argued December 4, 1956—decided February 5, 1957

*Morris Robinson,* for the appellant (plaintiff).

*Jack Rubin,* assistant attorney general, with whom, on the brief, was *John J. Bracken,* attorney general, for the appellee (defendant).

DALY, J. The plaintiff appealed to the Superior Court from the action of the defendant in appraising damages in the sum of $5000 for the taking of a part of his premises in the town of Norwalk for a trunk-line highway known as the Greenwich-Killingly Expressway. The matter was referred to a state referee for the reassessing of damages. The referee heard witnesses, viewed the property and filed a report in which he found that the fair market value of the property at the time of the taking was $4500 and that the consequential damages to the plaintiff's house on the remaining land was $5000. He assessed $9500 total damages to the plaintiff. The court overruled the plaintiff's exceptions to the report, accepted it, and found the sum of $9500 to be the fair amount of damages. The plaintiff has appealed to this court from the judgment rendered.

The following facts were found by the referee: The property taken is a three-acre piece, part of a ten-acre tract. As agreed by counsel, the title to the ten acres was in the plaintiff at the time of the taking, October 24, 1954, and the title to the seven acres remaining after the taking is now in the plaintiff and his brother, J. Leo Altman. The property taken is roughly pear-shaped and runs to a point on the south line of route 1. It is bounded on the west by Five Mile River, a considerable stream. The base line of the proposed expressway bisects the southerly portion of the three-acre piece. A substantial house was built by the plaintiff and his brother some years ago just south of what is now the southerly taking line. The three-acre piece is rolling land,

covered by an almost impenetrable jungle of vines and brush, with a few trees. About half of it is in a light industrial zone, and the balance is in a residential zone. There is no access to it from a public highway. The highest and best use of the entire ten-acre tract is for residential purposes, not for light industry. The plaintiff offered evidence as to its possible use for gravel mining in support of his claim that it was available for light industry and sought to prove that its value for gravel mining was $100,000. No test pits were dug. The exposed ground, as was shown by various cuts made in connection with the construction of the highway, did not appear to be gravel of even fair quality. It consisted mostly of boulders and pebbles. Development of the three-acre piece for light industrial use is obviously dependent on obtaining a right of way to a highway. This, in turn, depends on securing a right of way over land in different ownership and on the willingness of the zoning or planning boards to grant the requisite permission to extend the light industry rating to the whole tract. There is no certainty that the boards would grant the petition or that the plaintiff's co-owner would agree to give a right of way. The obtaining of a right of access is surrounded by too many uncertainties to merit consideration. In view of the lack of sewers, water and access, the wild character of the land, the obvious expense and difficulty of making it available for residences, and the prices paid for similar land in the neighborhood which had street frontages, the value of the subject land at the time of taking was $4500. The proposed expressway, under construction at this point, will pass quite close to the house, and the right of way will form a boundary of the remaining land. There was credible evidence, con-

firmed by observation, that this fact, not compensated for by any right of access to the new road, will result in a difference in value, before and after the taking, of $5000 in the house alone.

In his first assignment of error, the plaintiff alleges that the court erred in refusing to strike from the report certain facts which, he claims, were found without evidence. He challenges the referee's findings that there was no access from a public highway, that the highest and best use of the land was for residential purposes, that the land was of a wild character, and that the expense and the difficulty of making it available for residences were obvious. He contends, also, that there was no evidence of the prices paid for similar land in the neighborhood with street frontages.

The referee's view of the land furnished evidence of its character, and that there would be expense and difficulty in making it available for residences, as truly as if that information had been presented by the lips of witnesses. *Hollister* v. *Cox,* 131 Conn. 523, 525, 41 A.2d 93; *G. F. Heublein, Inc.* v. *Street Commissioners,* 109 Conn. 212, 218, 146 A. 20. It appeared that the only means of access to the property was over Shady Brook Lane, a private road leading in from the public highway through property in a residential zone. A plaintiff's witness testified that the property taken had no frontage on any street, that the local zoning authority would not permit industrial use of Shady Brook Lane, since the entry to it was in a residential zone, and that no development of the land could be initiated before its entire layout was approved by the zoning authority, regardless of the regulations. A defendant's witness testified that the highest and best use of the land taken was for residential purposes. He stated,

also, the prices paid for similar land in the neighborhood with street frontages, including a parcel sold by the plaintiff. The claim that the challenged facts were found without evidence has no merit.

In his second assignment of error, the plaintiff avers that the court erred in refusing to strike from the referee's report certain facts which he asserts were found without credible evidence. Section 173 of the Practice Book, which, as stated in § 179, governs the procedure where matters are referred to state referees, provides that the court will not correct a finding of fact "unless a material fact has been found without evidence or the [referee] has failed to find an admitted or undisputed fact." The plaintiff's claim that facts were found without credible evidence presents another instance where an unsuccessful litigant, still unconvinced, renews in this court his previous fruitless effort to discredit the evidence submitted by his opponent. "Nothing in our law is more elementary than that the trier is the final judge of the credibility of witnesses and of the weight to be accorded their testimony." *Morgan* v. *Hill*, 139 Conn. 159, 161, 90 A.2d 641.

The plaintiff's third assignment of error is an assertion that the court erred in refusing to add to the referee's report certain facts which by his motion to correct the report he had sought to have added. He claims that they were supported by undisputed testimony. He does not claim, and in his exceptions to the report did not allege, that they were admitted or undisputed facts. An allegation that certain facts were supported by undisputed testimony is not the equivalent of a statement that the facts testified to were admitted or undisputed. *Seymour Trust Co.* v. *Hershowitz*, 103 Conn. 532, 534, 131 A. 399. It is true that in Form No. 449 in

the Practice Book, entitled "Exceptions to Report of Committee, and its Acceptance," the words "which were supported by undisputed testimony" are used. However, as stated in § 472 of the Practice Book, the forms, "except as noted in the . . . rules . . . are open to the same objections as are any other pleadings." Since § 173 did not empower the court to correct the referee's report by adding facts which were supported by undisputed testimony, the court did not err as claimed by the plaintiff in this assignment.

In another assignment of error, the plaintiff claims that there was no evidence to support the referee's conclusions and that the court erred in sustaining them. In his exceptions to the report and its acceptance, the plaintiff claimed that these conclusions could not logically or reasonably be drawn from the subordinate facts found. Section 174 of the Practice Book provides that a party may file exceptions to the acceptance of a report on the ground that conclusions of fact stated in it were not properly reached on the basis of the subordinate facts found. Therefore, the conclusions of fact were reviewable by the court to determine whether they were properly reached on the basis of the subordinate facts found and the applicable principles of law. The referee's conclusions cannot be attacked by reviewing the evidence to determine whether that furnishes them with legal support. *Gowdy* v. *Gowdy,* 120 Conn. 508, 509, 181 A. 462. But that aside, the referee's conclusions were properly reached on the basis of the subordinate facts found by him. As stated by the court in its memorandum on the plaintiff's exceptions to the report and its acceptance, the referee's finding that the land could not be valued as light industrial property was based on his

finding that there was no access to the property which could enable it to be used for such purposes. In the absence of such access, the property had no value for light industrial use. This was the core of the conclusion that the highest and best use of the land was for residential purposes. The determination of the damages to be paid required the consideration of everything by which the value was legitimately affected. *Harvey Textile Co.* v. *Hill,* 135 Conn. 686, 688, 67 A.2d 851. Circumstances and conditions tending to depreciate the property are as competent as those which are favorable. 2 Lewis, Eminent Domain (3d Ed.) p. 1231.

The plaintiff maintains that the court erred in not finding that at the hearing upon his exceptions to the referee's report he was not allowed to present additional evidence which he claims he offered to produce to prove that his land was available for light industrial use. The court made no finding, although the plaintiff filed a request for one with an annexed draft finding containing the claimed ruling. The plaintiff, however, has not, in his brief or oral argument, pursued the assignment of error that the court erred in refusing to make a finding, and we therefore treat it as abandoned. *Marchlewski* v. *Casella,* 141 Conn. 377, 378, 106 A.2d 466. Moreover, a failure to make a finding is not assignable as error. *France* v. *Munson,* 123 Conn. 102, 108, 192 A. 706. Section 402 of the Practice Book provides that this court may, upon the motion of any party, order a judge to take any action necessary to complete the record for the proper presentation of an appeal. The remedy for a trial court's failure to make a finding is by motion to this court for an order as provided for in § 402. Maltbie, Conn. App. Proc. (2d Ed.) § 279. In another assignment of error,

the plaintiff asserts that the court erred in rejecting his offer to produce the additional evidence. Whether the plaintiff should have had an opportunity to produce the evidence is a question which could be determined only on the basis of a proper finding. Without such a finding, the record does not present for our consideration the correctness of the claimed ruling. *Kane* v. *Kane,* 118 Conn. 291, 294, 172 A. 84; Practice Book § 385.

The plaintiff's averments that the referee erred in rulings on evidence are without merit and require no discussion. The court did not err, as claimed by the plaintiff, in overruling the plaintiff's exceptions to the report of the referee and its acceptance.

There is no error.

In this opinion the other judges concurred.