CARL DAVIS *v.* P. GAMBARDELLA AND SON CHEESE CORPORATION ET AL.

BALDWIN, C. J., KING, MURPHY, MELLITZ and SHEA, Js.

Argued November 5, 1959—decided May 24, 1960

*Philip R. Shiff,* for the appellants (defendants).

*Jacob Schwolsky* and *Henry J. Goldberg,* for the appellee (plaintiff).

MELLITZ, J. The plaintiff was injured on December 17, 1955, when a truck he was operating on route 17 in Glastonbury was struck in the rear by a truck operated by the defendant John S. Bruno, an em-

ployee of the named defendant, which had leased
the truck from the defendant Truck Leasing Com-
pany, Inc. Upon a trial to the court, the collision
was found to have been caused by the negligence of
Bruno. The plaintiff was awarded damages total-
ing $7608.50, which, as shown by a supplemental
finding, included an allowance of $1500 for impair-
ment of earning capacity.[1] The defendants have ap-

---

[1] After the argument of this case, and in the course of our con-
sideration of it, the following order was entered: "It is ordered
that no later than April 1, 1960, the trial court shall file a sup-
plemental finding showing the amount determined by it to be just
compensation for the plaintiff's impairment of earning capacity and
that in the meantime this appeal shall be continued on our docket
without decision, subject to the right of the parties to assign error
in the supplemental finding and, if error is so assigned, to claim the
case for argument on the additional error assigned and to file further
briefs."

In an opinion accompanying the order, we said the following: "To
present their claims on appeal properly, the defendants have en-
deavored in various ways, without success, to obtain from the trial
court an indication of how much of the award represented damages
for impairment of earning capacity. The procedures employed by
them to obtain this information included (1) a motion for a special
finding under §§ 52-226 and 52-231 of the General Statutes; (2) a
request for a finding, under § 389 of the Practice Book, to which
was attached a draft finding containing a paragraph which, if
adopted and completed by the trial court, would have furnished the
information sought; (3) a motion to the trial court, under § 423 of
the Practice Book, for a correction of the record; and (4) a motion
to us, under § 423 of the Practice Book, for an order directing the
correction of the record. In addition, the defendants have assigned
as error the refusal of the trial court 'to make a finding as to the
amount of damages awarded by the court to the plaintiff for alleged
impairment of earning capacity and in denying the defendants'
motion for a special finding.'

"In *Tower* v. *Camp*, 103 Conn. 41, 45, 130 A. 86, we said that a
party whose motion for a special finding has been denied may enforce
his right to one by proper procedure but not by assigning the denial
as error. The reason for our denial of the motion made to us under
§ 423 of the Practice Book was that a motion under that rule, the
present counterpart of the former motion to rectify the appeal, is
not designed to serve the purpose of forcing the trial court to make

pealed, assigning error in the finding, in a ruling on evidence and in the inclusion in the damages of an allowance for impairment of earning capacity. It was also assigned as error that the damages apart from this allowance were excessive.

The facts pertinent to the issues which require discussion, with such corrections in the finding as are warranted, are the following: The plaintiff was a partner with his mother and two brothers in the operation of a poultry farm of seventy-two acres in East Haddam. The partnership was one of the two largest egg producers in Connecticut, marketing six million eggs a year. In the conduct of the business, the partnership utilized a number of trucks as well as other equipment and employed help. The plaintiff had been engaged in the business nineteen years and for many years had regularly, three times a week, made deliveries of eggs by truck to dairies and supermarkets in Hartford and nearby areas. It was his practice, on the day before he made delivery, to load his truck with cases of eggs. A helper would assist. Each case weighed about sixty pounds.

a finding. Maltbie, Conn. App. Proc. § 283. A motion under § 402 of the Practice Book for an order to complete the record would have been more appropriate. *Altman* v. *Hill*, 144 Conn. 233, 240, 129 A.2d 358; Maltbie, op. cit., § 279.

"The fact remains that we are considerably handicapped in our analysis of the basic issue on this appeal by the lack of anything in the record showing the trial court's evaluation of the impairment of earning capacity. Nor can the inadequacy of the record be attributed to any inexcusable lack of diligence on the part of the defendants.

"The supervision and control of proceedings on appeal, except as it is otherwise specifically provided in the rules, is vested in the Supreme Court from the time the appeal is taken. Practice Book § 435; *State* v. *Palmieri*, 143 Conn. 569, 570, 124 A.2d 911. Under the peculiar circumstances of this case we have decided to act of our own motion, under the supervisory power inhering in us, to order the filing of a supplemental finding. See Practice Book § 396."

The plaintiff made the deliveries alone, unloading the truck and carrying the cases of eggs himself. His other duties included the raising of a replacement flock of about 23,000 baby chicks each year; sweeping and washing the coops; personally handling the disinfectant; feeding and watering the chicks; culling them in the coops; and setting up the complete vaccination process on the range. In addition, he did most of the heavy work on the farm as well as the repairs, including painting, carpentry, plumbing and masonry work.

As a result of his injuries, the plaintiff was away from his work six full weeks and was partially disabled until the end of March, 1956. During the time he was partially disabled, he worked half time, doing only light work such as checking employees, buying feed, candling eggs, and supervising. Not until October, 1956, was he able to do a full day's work, and even then he could not make deliveries; this inability continued to the time of the trial. His brothers performed most of the work he was unable to do. The partnership did not employ extra help because of his incapacity. He presented in evidence, without objection, copies of his income tax returns for 1954, 1955 and 1956, and records showing the operations of the partnership for the same years. These papers contained a complete breakdown of all receipts and disbursements, including payments made each week to each of the partners. The plaintiff's income from the partnership during 1955 was $5482.22 and during 1956, $7402.19. The plaintiff testified, over objection and exception, that from the time of the inception of the business he had drawn from it $100 every week. He claimed that his earning capacity was in excess of this amount.

The basic contention of the defendants is that

there was no sufficient foundation in the evidence for an award of damages for impairment of earning capacity and that the court committed error in admitting and giving consideration to the testimony of the plaintiff that he drew $100 a week from the business.

To be entitled to a recovery for impairment of earning capacity, the plaintiff had the burden of establishing a reasonable probability that he sustained such an impairment, and he was required to lay a foundation, by presenting such evidence as the nature of the case permitted, to enable the court to make a fair and reasonable estimate of the amount of his loss. Establishment of the loss from impairment of earning capacity involves, as a rule, an inquiry into the value of the person's capacity to earn money by his labor, physical or intellectual. In *Comstock* v. *Connecticut Ry. & Lighting Co.*, 77 Conn. 65, 68, 58 A. 465, two modes of proving the value of that capacity were discussed, and it was noted that the proof was relatively simple in the case of a person who was employed on a salary or who worked at a trade in which a fixed rate of wages was customarily paid. The earnings of such a person, where they can be shown, are, however, merely evidence in aid of the establishment of the value of the earning capacity and do not, in themselves, fix the value. *Chase* v. *Fitzgerald,* 132 Conn. 461, 469, 45 A.2d 789; *Hayes* v. *Morris & Co.,* 98 Conn. 603, 606, 119 A. 901; *Mitchell* v. *Walton Lunch Co.,* 305 Mass. 76, 78, 25 N.E.2d 151. Where a person is not able to show earnings of this nature, the problem of proof frequently is troublesome. *Turner* v. *Scanlon,* 146 Conn. 149, 159, 148 A.2d 334; *Bach* v. *Giordano,* 144 Conn. 183, 186, 128 A.2d 323; *McKirdy* v. *Cascio,* 142 Conn. 80, 86, 111 A.2d 555.

The defendants objected to testimony of the plaintiff that he drew $100 weekly from the partnership business, on the ground that the weekly drawings of the partnership proved nothing since the partners were at liberty to draw any agreed amount. Recently, in *Lashin* v. *Corcoran,* 146 Conn. 512, 515, 152 A.2d 639, we dealt with the case of a person circumstanced as was the plaintiff here, that is, her services were rendered in the prosecution of a business in which she was engaged with others. We held that in such a case the value of earning capacity is to be measured by the value of the services the person has contributed to the business. For the plaintiff to be entitled to a recovery for impairment of his earning capacity, he had the burden of establishing facts from which the value of his services to the business could be ascertained. Relevant to that inquiry was any evidence tending to show, either by itself or in connection with other evidence, facts from which the value of his services could be deduced. In the course of his proof, he presented evidence of the nature and scope of the business and, in considerable detail, evidence of the character of the services he performed both before and after he sustained his injuries. In addition, there was evidence of his income from the partnership, and there were records relating to the business. The testimony concerning the plaintiff's weekly drawing was relevant and admissible, not as a specific measure of the value of his services, but as evidence to be considered in connection with all the other evidence before the court on the operation of the business and the plaintiff's connection with it. See *Floyd* v. *Fruit Industries, Inc.,* 144 Conn. 659, 674, 136 A.2d 918. The probative force of the evidence was for the court. *Wolfe* v. *Ives,* 83 Conn.

174, 180, 76 A. 526. The records relating to the operation of the business disclosed the relationship of the plaintiff's yearly earnings and weekly drawings to the total results of the business and the drawings of the other partners. They afforded the defendants the means and the opportunity of fully testing the plaintiff's claims. *Bach* v. *Giordano,* 144 Conn. 183, 186, 128 A.2d 323; *Feehan* v. *Slater,* 89 Conn. 697, 703, 96 A. 159. Upon the facts proven, the court had a sufficient basis, without indulging in speculation or conjecture, for determining the plaintiff's loss of earning capacity. *Bach* v. *Giordano,* supra; *Arthur Drug Stores, Inc.* v. *Leslie Realty, Inc.,* 142 Conn. 270, 275, 113 A.2d 506; *Anderson* v. *Gengras Motors, Inc.,* 141 Conn. 688, 693, 109 A.2d 502; *Gruskay* v. *Simenauskas,* 107 Conn. 380, 387, 140 A. 724; *Doherty* v. *Ruiz,* 302 Mass. 145, 147, 18 N.E.2d 542.

The claim that the damages were excessive was based largely on the inclusion in them of an award for loss of earning capacity and on the fact that there was an express finding that the plaintiff had suffered no permanent injury. The aspect relating to the award for loss of earning capacity has already been dealt with. The plaintiff was, according to the finding, totally incapacitated for six weeks as a result of his injuries and partially disabled for approximately nine more weeks. The award of $1500 for impairment of earning capacity was warranted. The special damages incurred by the plaintiff for medical expenses totaled $308.50. The award, then, for pain and suffering amounted to $5800. The memorandum of decision, which we may consult to discover the rationale of the court in computing the damages, discloses that it did not regard the plaintiff's injuries as permanent and

that it computed the damages for pain and suffering after consideration of all the evidence, particularly that concerning an aggravation of a pre-existing low back condition and the plaintiff's consequent severe pain and suffering. The amount to be awarded for such an element of damages is within the province of the trier, whose determination will not be disturbed unless the sum is shown to be plainly excessive. *Stults* v. *Palmer,* 141 Conn. 709, 711, 109 A.2d 592; *Gondek* v. *Pliska,* 135 Conn. 610, 617, 67 A.2d 552. Although the court found that the plaintiff sustained no permanent injury, it also found that in the opinion of one of the doctors there was a "fifty-fifty chance" that the low back condition attributable to the accident would be permanent. This finding afforded no basis for an award of damages. "In assessing damages . . . , a trier is not concerned with possibilities but with reasonable probabilities." *Sheiman* v. *Sheiman,* 143 Conn. 222, 225, 121 A.2d 285. The conclusion seems inescapable that the finding in question entered into the award of $5800 for pain and suffering. The amount was plainly excessive, and a remittitur of $2000 should be ordered.

There is error, the judgment is set aside and a new trial is ordered on the issue of damages only, unless the plaintiff, within three weeks from the time he receives notice of the decision of this court, shall file with the clerk of the Superior Court in Middlesex County a remittitur of $2000 of the sum awarded him as damages; if such a remittitur is filed, judgment shall thereupon be entered as to the residue, with interest from the date of the original judgment. The costs on this appeal shall, in either event, be taxed in favor of the defendants.

In this opinion the other judges concurred.