LEONARD P. BIRNBAUM ET AL. *v.* HOWARD S. IVES, HIGHWAY COMMISSIONER

HOUSE, C. J., RYAN, SHAPIRO, LOISELLE and FITZGERALD, Js.

Argued February 2—decided April 19, 1972

*David Kotkin,* with whom, on the brief, was *Louise H. Hunt,* for the appellants-appellees (plaintiffs).

*Jack Rubin,* assistant attorney general, with whom, on the brief, was *Robert K. Killian,* attorney general, for the appellee-appellant (defendant).

HOUSE, C. J. On March 21, 1966, the state, through the defendant highway commissioner, acquired, by condemnation, land and a structure thereon located on the easterly side of Washington Street in the city of New Britain. The defendant highway commissioner assessed damages arising from the taking in the sum of $257,300. This sum was deposited by the defendant with the clerk of the Superior Court and the plaintiffs withdrew the entire amount. The plaintiffs appealed to the Superior Court from the assessment of damages and the appeal was referred to Hon. Vine R. Parmelee, a state referee, hereinafter referred to as the first referee. The referee, purporting to act as the court, filed a memorandum of decision fixing damages for the taking at $102,000 and on October 17, 1967, rendered judgment for that amount. On motion of the plaintiffs, the Superior Court *(Palmer, J.)* vacated this judgment on the ground that under the then controlling statute (Public Acts, 1967, No. 621 § 11) the referee was not empowered to render a judgment. The court concluded that the memorandum of decision was in effect a report filed pursuant to the provisions of Practice Book § 354, as amended, and ordered that the appeal be recommitted to the referee with direction to file a report in numbered paragraphs as the Practice Book provides. The referee filed a report as ordered, finding that the structure on the premises had no value and that the fair market value of the entire property was $102,000. The plaintiffs, pursuant to § 363 of the Practice Book, thereupon moved that the referee's report be rejected and an order be entered referring the matter to another referee for a hearing de novo. On September 30, 1968, the court sustained the objections of the plaintiffs and ordered the matter referred to Hon. Raymond E. Baldwin, a

state referee, who, pursuant to the provisions of § 52-434a of the General Statutes, heard the appeal with the same powers and jurisdiction as the Superior Court which ordered the reference.

The second referee, sitting as a court, found the following facts: The land in question is located in New Britain approximately one block from the downtown business and commercial districts. It consists of approximately .72 of an acre and is located in an industrial zone. The building situated on the land at the time of the taking had been constructed in two sections, the first in 1912 and the second, an addition on the east side, in 1924. It was six stories in height, contained a full basement and was constructed of reinforced concrete with large concrete posts on each floor. At the time of the taking, the two elevators in the building were inoperable and had not been used for a long time. The building was a veritable shell, and while the basic structure was sound it would have been necessary to replace the wiring, heating, plumbing and wood flooring. In addition, most of the windows had been broken and were in need of repair and replacement. Outwardly, the building was in a rundown, depreciated condition. The entire property had been purchased for $76,000 by the plaintiffs in 1957 through the Birnbaum Furniture Company at a public auction after it had been abandoned as a manufacturing site. The plaintiffs made no improvements to the property after the purchase and on September 1, 1959, petitioned the board of assessors of the city of New Britain for a revision of the assessment on the subject property representing that "$76,000.00 . . . is the 100% value."

In considering the building's usefulness and value, the second referee (exercising the powers of the

court and hereinafter referred to as the court) found that it suffered from functional depreciation since it did not conform with the modern concept of single- and two-story structures for industrial plants. In addition, there was totally inadequate parking space available for employees and no available space for the outside storage of raw materials. The entrances to the building for receiving and shipping were inadequate and the number and size of the concrete supporting columns took up a large amount of floor space and reduced substantially the usable floor area. At the time of the taking, the building, unless completely renovated, was not usable for anything other than bulk storage of materials impervious to the weather. It would cost $439,700 to put the building into good physical condition and make it into a property which could be rented for industrial purposes. To make it suitable for apartment purposes would cost between $600,000 and $700,000. The building was obsolete for manufacturing purposes. Its best use was for commercial purposes of a warehouse but, according to present-day standards, the building was an overdevelopment of the land and a detriment rather than an advantage to it. At the date of the taking, the economic life of the building was "nothing."

From these findings the court concluded that the building was physically and functionally obsolete and worthless, and it would have been economically unsound to spend any substantial sum of money in an effort to render it usable. It concluded that in determining any value of the building in its condition at the time of the taking, the reproduction cost less depreciation method of valuation was invalid and unreliable and an approach utilizing the capitalization of prospective income, if the building were

renovated, was purely theoretical and too speculative a method by which to ascertain the fair market value.

The court further concluded that the building contributed nothing to the value of the land and that the fair market value of the premises at the date of the taking and the amount due to the plaintiffs as damages for the taking was $120,330. It rendered judgment for the defendant in the amount of $136,970, $120,330 less than the $257,300 which had been deposited in court by the defendant and withdrawn by the plaintiffs pursuant to § 48-11 of the General Statutes. From that judgment the plaintiffs appealed to this court and the defendant took a cross appeal, assigning as error the September 30, 1968, order of the Superior Court refusing to accept the report of the first referee and referring the matter to the second referee for hearing.

On their appeal the plaintiffs have assigned as error the court's refusal to find facts which they claimed were admitted or undisputed, in the finding of several facts without evidence, in reaching several conclusions not supported by the evidence, in rejecting parts of expert testimony offered by the plaintiffs, and in overruling several of the plaintiffs' claims of law.

A primary contention of the plaintiffs is that the court erred in excluding and refusing to consider evidence as to the value of the structure predicated on a capitalization of income theory of appraisal. In support of this contention, the plaintiffs rely heavily on the recent case of *Connecticut Printers, Inc.* v. *Redevelopment Agency,* 159 Conn. 407, 270 A.2d 549. That case concerned the valuation of a five-story building which was so constructed as to be most efficiently utilized as a site for a printing, binding or

18

engraving operation. We determined that the referee's valuation, based on a capitalization of projected income as a general commercial building, was proper in light of the fact that there was no ready market for structures for printing plants, the highest and best use of the property. Although we approved the capitalization of prospective income approach as employed by the referee in that case, we clearly reiterated in that opinion the operative rule of law as to a referee's selection of a valuation method. "[N]o one method of valuation is controlling and . . . the referee may select the one most appropriate to the case before him." *Connecticut Printers, Inc.* v. *Redevelopment Agency,* supra, 414; *Brothers, Inc.* v. *Ansonia Redevelopment Agency,* 158 Conn. 37, 43, 255 A.2d 836; *Research Associates, Inc.* v. *New Haven Redevelopment Agency,* 152 Conn. 137, 142–43, 204 A.2d 833. The court's conclusion in the case at bar that the capitalization of income approach applied to the circumstances before it would be too speculative and purely theoretical was reasonable and proper. It finds evidential support in the testimony of the defendant's expert witness, David Collins, and legal support in the decisions of other courts and in the writings of noted authors. See *Olson* v. *United States,* 292 U.S. 246, 257, 54 S. Ct. 704, 78 L. Ed. 1236; *Peoples Gas Light & Coke Co.* v. *Buckles,* 24 Ill. 2d 520, 182 N.E.2d 169; 5 Nichols, Eminent Domain (3d Rev. Ed.) § 19.22 [2].

The plaintiffs' second contention is that the court erred in not taking into consideration the building's potential commercial use. A review of the finding, which is not subject to material correction, discloses that the court specifically found that the highest and best use of the building was for commercial pur-

poses. The fact that it also made reference to the building's industrial capacity and the cost of refurbishing the structure for a variety of uses does not nullify this finding but does support the conclusion that the building was not usable in its condition, was not usable for anything except on complete renovation which would require a considerable capital investment, and that it would have been economically unsound to spend any substantial sum of money in an effort to render it usable.

The plaintiffs' third and final assignment of error is that there is insufficient evidence to sustain the findings and conclusion that the building in its present state added nothing to the value of the land. In this regard, our recent comment in *Research Associates, Inc.* v. *New Haven Redevelopment Agency,* supra, 142, is pertinent: "The claim that as a matter of law the buildings must have had some value is unsound. Their very presence on the land might have been considered by a prospective purchaser as a liability and a detriment rather than an element of value." The plaintiffs contend, however, that the findings that the building lacked value are not supported by the evidence presented at the hearing. An examination of the exhibits and appendices to the briefs of the parties indicates that three expert witnesses testified as to the value of the building. All of the experts, including Collins, who testified on behalf of the defendant, were of the opinion that the building had value.[1] Thus, if the court's valuation is to stand, it must find support outside the opinions of value expressed by the appraisers offered by the parties.

[1] John T. Dunn valued the building at $218,186; John F. Mulready valued the building at roughly $227,250; David Collins valued the building at $165,488.

A quantum of evidence which we have often considered in the past is the court's view of the property and its appraisal based in part on that view. "We have consistently held that the visual observations made by the trier on a visit to the property are as much evidence as the evidence presented for his consideration by the witnesses under oath. They are in fact supplemental evidence. *Altman* v. *Hill*, 144 Conn. 233, 237, 129 A.2d 358; *Hollister* v. *Cox*, 131 Conn. 523, 525, 41 A.2d 93; *G. F. Heublein, Inc.* v. *Street Commissioners*, 109 Conn. 212, 218, 146 A. 20; *Forbes* v. *Orange*, 85 Conn. 255, 257, 82 A. 559; *McGar* v. *Bristol*, 71 Conn. 652, 655, 42 A. 1000." *Houston* v. *Highway Commissioner*, 152 Conn. 557, 558, 210 A.2d 176; see *Gentile* v. *Ives*, 159 Conn. 443, 452, 270 A.2d 680, cert. denied, 400 U.S. 1008, 91 S. Ct. 566, 27 L. Ed. 2d 621. Similarly, we have held that the opinion of an expert is not binding on the court. *Northeastern Gas Transmission Co.* v. *Tersana Acres, Inc.*, 144 Conn. 509, 512, 134 A.2d 253; *Clark* v. *Haggard*, 141 Conn. 668, 674, 109 A.2d 358. "The purpose of offering in evidence the opinions of experts as to the value of land is to aid the trier to arrive at his own conclusion, which is to be reached by weighing those opinions in the light of all the circumstances in evidence bearing upon value and his own general knowledge of the elements going to establish it. *Moss* v. *New Haven Redevelopment Agency*, 146 Conn. 421, 425, 151 A.2d 693; *Appeal of Cohen*, 117 Conn. 75, 85, 166 A. 747. Ultimately, the determination of the value of the land depended on the considered judgment of the referee, taking into account the divergent opinions expressed by the witnesses and the claims advanced by the parties. General Statutes § 8-132; *Benson* v. *North Haven*, 126 Conn. 506, 510, 12 A.2d 551." *Bennett* v. *New Haven*

*Redevelopment Agency,* 148 Conn. 513, 516, 172 A.2d 612. Thus, the only meaningful issue raised by this assignment of error is whether the referee's personal view of the property even though it was after the building had been demolished, his assessment of the weight and credibility to give to the opinions of witnesses and his consideration of the earlier valuation of the property by the plaintiffs themselves, coupled with the undisputed findings as to the condition of the premises, are sufficient to uphold a valuation which is at variance with the opinions expressed by the appraisers employed by the parties.

"Nothing in our law is more elementary than that the trier is the final judge of the credibility of witnesses and of the weight to be accorded to their testimony. *Appeal of Cohen,* 117 Conn. 75, 81, 166 A. 747; *Fox* v. *South Norwalk,* 85 Conn. 237, 242, 82 A. 642." *Morgan* v. *Hill,* 139 Conn. 159, 161, 90 A.2d 641. As we have already noted, "[t]he purpose of offering in evidence the opinions of expert witnesses as to such matters as land values is to aid the trier to arrive at his own conclusion, which is to be reached by weighing those opinions in the light of all the circumstances in evidence bearing upon value, and his own general knowledge of the elements going to establish it." *Appeal of Cohen,* 117 Conn. 75, 85, 166 A. 747.

Under our law, a state referee sitting as a court on appeals in condemnation cases is more than just a trier of fact or an arbitrator of differing opinions of witnesses. He is charged by the General Statutes and the decisions of this court with the duty of making an independent determination of value and fair compensation in the light of all the circumstances, the evidence, his general knowledge and his viewing of the premises. He is not limited by the estimate

of value reached by the taking authority. General Statutes § 48-11 provides that the taking authority shall deposit in court to the use of the person whose property is being taken an amount "estimated" to be just compensation but "[t]he court may require such person or persons to give bond to the state conditioned on the repayment to the state of so much of such deposit which may be withdrawn as exceeds the amount of compensation finally awarded." The statute clearly envisions instances where the final award by the court will be less than the value estimated by the taking authority. Similarly, § 13a-74 of the General Statutes provides that all highway condemnation assessments in excess of $15,000 even though accepted by the condemnee must, before payment is made, be approved by a state referee. Thus, there is effective legislative sanction for the authority of the referee independently to determine a value for condemned property which is less than that adopted by the taking authority or agreed on between the condemnee and the taking authority.

No attack has been made on the findings of the court which relate to the deteriorated condition of the building at the time of the taking, the fact that the plaintiffs themselves had valued the property at $76,000 just five and one-half years before the taking and that no substantial expenditures for upkeep or alterations had been made by the plaintiffs during the period of their ownership. The court's memorandum of decision also indicates that its valuation of $120,330 as of the time of taking in 1966 was based on its examination of comparable sales listed in the exhibits offered in the form of appraisals by the expert witnesses and its view of the premises and its environs. We cannot find that the court could not reasonably and logically reach the conclu-

sion it did in fixing the sum of $120,330 as fair and just compensation for the property taken.

The defendant's cross appeal, which assigns as error the trial court's rejection of the first referee's report, was not filed until after the rehearing and after judgment was rendered by the court on the second reference. At the time that the first referee's report was rejected and the matter was referred to the second referee, the defendant filed a motion to revoke the reference, which was denied. It is clear that a proper and timely appeal could have been taken at that time from the denial of the motion to revoke the reference. *Zingus* v. *Redevelopment Agency,* 161 Conn. 276, 287 A.2d 366. Claimed errors which might have been assigned on a timely appeal and from which no appeal was taken are no longer open to review. *Zingus* v. *Redevelopment Agency,* supra, 282; *State* v. *Fahey,* 147 Conn. 13, 16, 156 A.2d 463.

There is no error on this appeal; the cross appeal is dismissed.

In this opinion the other judges concurred.