[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an appeal by Simon Kreisler and Lillian B. Kreisler, Trustees, from the assessment of damages in the amount of $25,400 paid by the defendant for the partial taking by eminent domain on September 27, 1993, of their property situated on the southerly CT Page 3884 side of Pleasant Valley Road, in the Town of Mansfield, pursuant to General Statutes Sections 48-6, 48-12 and 8-129. The purpose of the taking was for the reconstruction and widening of Mansfield Avenue.
Said premises are more particularly shown on a certain map enthused: "Town of Mansfield, Map Showing Land Acquired From Simon Lillian B. Kreisler By Town of Mansfield, Reconstruction of Mansfield Avenue, Scale 1" = 40', December 1992," and are bounded and described as follows: Northerly by Pleasant Valley Road, 195.79 feet; Northerly and Easterly by land now or formerly of Simon and Lillian B. Kreisler, 1138.85 feet; Southerly by Project Line, 50 feet; and Westerly by land now or formerly of Simon and Lillian B. Kreisler, 1016.77 feet.
Said parcel of land taken contains 1.24 acres, and was taken together with two drainage rights of way located on the westerly side of Mansfield Avenue and consisting of 600 square feet each, and easements to drain, as shown on said map. The paved area of the land taken, consisting of 26,173.6 square feet, more or less, was subject to a right of way in favor of the Town of Mansfield for highway purposes. Although the fee to the town road continued in the plaintiffs until the taking, the town maintained and serviced the road for many years.
At the time of taking, the subject property consisted of two parcels. The first piece contained 104.5 acres with 1,700 feet fronting on the east side of Mansfield Avenue and 2,400 feet fronting on the south side of Pleasant Valley Road. Located on this parcel were a 1-story frame dwelling with a 2-stall attached garage. In addition, there were two 2-story frame poultry houses and a 1-story frame barn. The second piece contained 18 acres with 1,330 feet fronting on the west side of Mansfield Avenue and 540 feet fronting on the south side of Pleasant Valley Road. The buildings were not affected by the taking. Therefore, they were not appraised or valued in this proceeding.
The two parcels are at street grade and reasonably level. Parcel #1 consists of 17 acres of cropland, 26.5 acres of pasture and 60 acres of woodland, in addition to a one acre home site. Conantville Brook flows through the woodland. About 12 acres along the brook are in a flood hazard zone. Parcel #2 contains 8.5 acres of pasture and 8.5 acres of woodland. The subject property is located in an Industrial Zone. CT Page 3885
In the opinion of the plaintiffs' appraiser, Peter R. Marsele, the highest and best use of the property is a continuation of its present use for agricultural purposes and the raising of poultry. The opinion of the defendant's appraiser, Herbert H. Riess, is that the highest and best use for the subject property is its present use as a single-family residence and vacant land leased for the growing of crops.
The court finds that at the time of the taking, the highest and best use of the subject property was its current use in three parts (1) use of the portion on the east side of Mansfield Avenue for agricultural crops, poultry breeding and residential purposes; (2) use of the portion on the west side of Mansfield Avenue for agricultural crops; and (3) use of the area in between these two portions as a public road, now known as Mansfield Avenue.
The plaintiffs' appraiser utilized the sales comparison approach in determining his before and after taking values of the entire land area. For this purpose, in both instances he used two sales of land, the first, a parcel containing 73.19 acres in Mansfield, and the second, a parcel of 44.352 acres in Putnam. In valuing the two parcels of subject land in their entirety, less one acre allocated to the home site, he appraised the entire land area of 121.5 acres at $34,000 per acre for a total valuation of $4,131,000.
The after taking valuation was determined in two parts. The easterly portion of 102.88 acres was estimated, as before the taking, at $34,000 per acre for a total value of $3,497,920. The unit value of the westerly tract was reduced by 20% because there is no limit upon the drainage easements to restrict the water flow onto the property, thereby making the entire parcel subject to flooding. In this manner, he estimated the 17.38 acres in this piece at $27,200 per acre for a valuation of $472,736. By his analysis — the total after taking valuation was found to be $3,970,656, rounded to $3,971,000. The net difference between the before and after values, or $160,000, was his estimate of the damages to the plaintiffs by the defendant's taking.
The defendant's appraiser made two appraisals utilizing the market data approach, but he did not use the before and after taking valuations in ascertaining the plaintiffs' damages. The first appraisal, dated October 29, 1992, was a direct damage determination in the amount of $38,000 rounded. This consisted of CT Page 3886 the acquisition of 0.65 acres, more or less, valued, at $1.15 per square foot, $32,561, and drainage easements valued at $5,000, for a total of $37,561, rounded to $38,000. On January 25, 1993, this valuation was increased $3,000 for the taking of the fee to the road bed. The area of the road, 0.60 of an acre, was valued at 10% of full fee value of $1.15, or 12 cents per square foot, rounded.
On March 16, 1993, the Office of Rights of Way of the Connecticut Department of Transportation rejected the original appraisal and its update after review, finding them unacceptable in both content and format. The requirements of the Department of Transportation specify that a direct damage appraisal is only allowable for compensation amounting up to $10,000. Since this appraisal exceeded that threshold, in their analysis it was "necessary to value the subject utilizing the `before and after' technique."
On March 25, 1993, the defendant's appraiser updated his 1992 appraisal "in order to comply with the required State regulations, and to further consider new sales data as requested." In his opinion the fee value of the land taken on both sides of the road pavement, 0.65 of an acre or 28,314 square feet, was 80 cents per square foot, for a total of $22,651. The drainage easements were valued at $1,000, making the total damages $24,000, rounded.
An increase was made to this appraisal on April 22, 1993, when the appraiser added the value of the fee to the roadway Mansfield Avenue, being 26,175 square feet. For this calculation, he assigned 10% of the unencumbered fee value of 80 cents per square foot, or 8 cents, for a total value of $2,094, rounded to $2,100, for the road bed fee. As of this time his estimate of damages was $26,100.
On May 4, 1993, the appraiser's valuation of damages was reduced on the basis of corrected survey measurements given him by the town's project engineer. The taking area along both sides of the existing road was reduced from 28,314 square feet to 27,878, a difference of 436 square feet. Computed at 80 cents a square foot, the damages were reduced by $349 rounded. This reduced the property damage from $22,651 to $22,302, rounded to $22,300. The decrease in area of the road bed was insignificant in amount and value, leaving that element of the damages at $2,100. The previous value of $1,000 for the drainage easements CT Page 3887 was unchanged, making the total damages $25,400, the amount of the assessment of damages paid on the taking of the plaintiffs' property on September 27, 1993.
The purpose of offering in evidence the opinions of experts as to the value of land is to aid the trier to arrive at his own conclusion, which is to be reached by weighing those opinions in the light of all the circumstances in evidence bearing upon value and his own general knowledge of the elements going to establish it. Birnbaum v. Ives, 163 Conn. 12, 20, 301 A.2d 362; Bennett v.New Haven Redevelopment Agency, 148 Conn. 513, 516, 172 A.2d 612.
"In a condemnation case, the referee is more than a trier of facts or an arbiter of differing opinions of witnesses. `He is charged by the General Statutes and the decisions of this court with the duty of making an independent determination of value and fair compensation in the light of the circumstances, the evidence, his general knowledge and his viewing of the premises.'Birnbaum v. Ives, supra, 21." Bowen v. Ives, 171 Conn. 231, 239.
The trial court viewed the premises. "`[T]he visual observations made by the trier on a visit to the property are as much evidence as the evidence presented for his consideration by the witnesses under oath.' Houston v. Highway Commissioner,152 Conn. 557, 558, 210 A.2d 176 (1965)." Anderson v. Latimer PointManagement Corporation, 208 Conn. 256, 262 (1968). During the viewing with counsel, it was observed that the rip-rapped plunge pool at the outfall of the drainage structure in the southerly drainage right of way extended beyond the 30-foot depth of the easement. The extension, while unmeasured, is evident to the naked eye. The plunge pool was created to protect the plaintiffs' surrounding property from erosion and siltation. This extension is admitted by the defendant to constitute a trespass which is stands willing to rectify. That matter, however, is beyond the scope of the immediate proceedings.
Flooding of the area beyond this drainage right of way every ten or twenty years is admitted. The directed drainage of the highway in this area and the right to drain concomitant to this drainage right of way will result in greater flooding of the land when it does occur. The probability of future flooding as a result of drainage rights taken by eminent domain is a proper consideration for a prudent appraiser in his evaluation, and for a referee in making his reassessment of damages. Rice v. Ives,27 Conn. Sup. 23, 29-30. CT Page 3888
"When part of a tract or land is taken for the public use, `just compensation' includes recovery for the part taken and for any damages visited upon the remainder which result from the taking. Bowen v. Ives, 171 Conn. 231, 236, 368 A.2d 82; Meridenv. Highway Commissioner, 169 Conn. 655, 659, 363 A.2d 1091. Damages are measured by application of the `before and after rule.' Ibid. The court must `determine the difference between the market value of the whole tract as it lay before the taking and the market value of what remained of it thereafter.' Lefebvre v.Cox, 129 Conn. 262, 263, 28 A.2d 5. The court should consider any and all damages which will foreseeably follow from the proper construction of the project, including any damage to the remainder which is a necessary, natural and proximate result of the taking. Bowen v. Ives, supra; Budney v. Ives, 156 Conn. 83,86, 239 A.2d 182; Holley v. Torrington, 63 Conn. 426, 433,218 A. 613." Plunske v. Wood, 171 Conn. 280, 283-81.
The different elements of damage to the remaining property recoverable in addition to direct damages are as numerous as the possible forms of injury to it, but they must be reasonably said to have affected its market value just after the taking. SeeBowen v. Ives, supra, 231, 238.
The elements of the plaintiffs' direct and severance damages due to the taking on September 27, 1993, are: (1) the loss of fee to about 10,018 square feet along the easterly side of Mansfield Avenue between the edge of the pavement and the taking line; (2) the loss of fee to about 17,860 square feet along the westerly side of Mansfield Avenue between the edge of the pavement and the taking line; (3) the loss of fee to about 26,173 square feet of the paved area of Mansfield Avenue that was subject to a right of way in favor of the defendant for highway purposes; (4) an unrestricted drainage right of way 30 feet long and 20 feet wide extending from the westerly taking line and located opposite station 8+26 along the center line of Mansfield Avenue; (5) an unrestricted drainage right of way 30 feet long and 20 feet wide extending from the westerly taking line and located opposite station 10+65 along the center line of Mansfield Avenue; (6) a full and perpetual easement to drain the highway from the easterly and westerly taking lines located opposite station 11+40 along the center line of Mansfield Avenue; and (7) an increase in the extent and amount of periodic flooding to which the southerly portion of the plaintiffs' remaining property is subject below the southerly drainage right of way. CT Page 3889
After viewing the site of the subject property, and after giving due consideration to the opinions of expert witnesses and to a knowledge of the elements that establish value, I find that the before taking value of the subject property was $2,610,350, and that the after taking value is $2,568,290. Damages, therefore assessed at $42,060, rounded to $42,000.
Judgment may enter for the plaintiffs in the sum of $42,000, less $25,400 already paid, or an an excess of $16,600, with interest at 8% per annum, from the date of taking to the date of payment, together with costs and a reasonable appraisal fee of $1,500.
William C. Bieluch, STATE TRIAL REFEREE.