[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an appeal taken by The Willi Bowling Center Corp. from the assessment of damages in the amount of $16,500 paid by the defendant for the partial taking by eminent domain on November 23, 1994, of their property situated on the southeasterly side of U.S. Route 6, and known as 292 Boston Post Road, in the Town of Windham, pursuant to General Statutes Sections 13a-73 (b) and 13a-73 (e)[1] for the layout, alteration, extension, widening, drainage, change of grade and improvement of the highway commonly known as U.S. Route 6.
Said premises are more particularly bounded and described as follows: CT Page 537-A
Northwesterly by present U.S. Route 6, 393.6 feet; Northeasterly by land n/o/f/o Carlman Frankel, et al., 32.88 feet; Southeasterly by Owner's remaining land, 403 feet, being a line designated "Taking Line", as shown on the map hereinafter referred to; and Southwesterly by land of the State of Connecticut, 3 feet.
Said parcel contains 3,936 square feet, or 0.0904 of an acre, more or less, together with all appurtenances, all of which more particulary appears on a map entitled: TOWN OF WINDHAM MAP SHOWING LAND ACQUIRED FROM THE WILLI BOWLING CENTER CORP. BY THE STATE OF CONNECTICUT RECONSTRUCTION OF U.S. ROUTE 6 SCALE 1"=40' APRIL 1994 JAMES F. BYRNES JR. TRANSPORTATION CHIEF ENGINEER BUREAU OF ENGINEERING AND HIGHWAY OPERATIONS". (163-141-6)
Said premises were taken together with the following rights on portions of Owner's remaining land:
1. A right to construct driveway within an area of 207 square feet, more or less, and located between and opposite approximate Stations 72+58 and 72+70 right, Base Line, Present U.S. Route 6, as more particularly shown of the map hereinabove referred to.
2. A right to install sedimentation control system within a CT Page 537-B distance of 54 linear feet, more or less, and located between and opposite approximate Stations 72+58 and 72+70 right, said Base Line, as more particularly shown on said map.
The aforesaid two rights shall terminate automatically upon completion of the work by the State.
The site contains 3.36 acres, with a street frontage of 393.6 feet, all of which is included in the taking. The zone is M-1 Industrial. There exists on the site a one-story masonry building, having an area of 36, 187 square feet and containing a 44 lane bowling center, a permitted use subject to a special permit exception. The location is a commercially developing area of town near the Windham airport. A new Wal-Mart store is located to the north of the site. It is a suburban area of Windham where the homes are older and increasingly being converted to commercial uses.
The trend for the area is improving as to commercial uses and declining as to residential uses. The recent intrusion of a massive Wal-Mart store on the same highway nearby will greatly enhance the commercial desirability of the plaintiff's neighborhood, especially of a tract comparable in acreage and a structure comparable to the subject property. The site is located on U.S. Route 6 and has convenient access to state and local CT Page 537-C highways. It is a heavy traffic area. The defendant estimates 15,300 cars passing by per day.
The building does not conform to front and side yard requirements. The front of the structure faces the patron parking area on its northeast side. The northwesterly side of the building faces the highway frontage, about 319 feet of which is a non-access highway on its southerly frontage taken by the State in 1969. This non-access frontage is to remain the same after the taking. In the northerly or front portion of this side wall of the building there exists an emergency exit with a six foot projecting overhanging roof or canopy that faced the former non-access street frontage about 18.5 feet distant, and now faces the non-access "taking line" about 9 feet away.
Both parties are in agreement, and the court so finds, that the highest and best use of the subject property is for the continuation of its present commercial use as a bowling facility.
The appraiser for the plaintiff utilized the sales comparison approach in his valuation of the subject land. Adjusting for the sales of two properties, one in Windham and the other in nearby Mansfield, he estimated the value of the plaintiff's land to be $2.74 per square foot, or $119,355 per acre, for a total of $415,000. He utilized the Marshall Valuation Manual for the cost CT Page 537-D approach in estimating the value of the building. This he found to be $1,126,000. In this manner he estimated the total value of the property before the taking to be $1,541,000.
In prefacing his valuation after the taking, he observed that the front (side) yard of the building at its nearest point to the highway was reduced from 22 feet to 9.1 feet, thereby increasing its non-conformity. Additionally, he noted that a large sign was within the taking area and that 11 parking spaces along the street frontage would be eliminated due to the taking.
His final estimate, however, was based on his professional knowledge and judgment that there was an overall 10% loss in value from the before value of the entire property. This devaluation amounted to $154,000, and was his estimate of damages due to the taking. This estimate considered the value of the land taken in fee, the value of the sign, the value of the amesite pavement, the value of the 11 parking spaces affected, and the restriction of access in the narrowed front (side) yard to wide-bodied vehicles for service to the rear of the building.
The defendant's appraiser was an employee of the defendant. He found that the plaintiff's building was not adversely affected by the taking, and limited his appraisal to the valuation of the land, utilizing the sales comparison approach. Based on three CT Page 537-E comparable sales, one each in Columbia, Windham and Mansfield, he selected a unit value of $85,000 per acre. This unit value of $85,000 per acre was broken down for mathematical purposes to be $1.9513 per square foot.
The defendant's appraiser found the before taking acreage to be 3.21 acres and its valuation at $85,000 per acre to be $272,850. To this he added the value of the improvements as follows: sign base and wiring — $1,045; curbing taken — $920; paving taken — $3,152; lawn taken — $23; or a total of $5,150 (rounded). His total before taking value was $278,000.
The land area remaining after the taking was estimated to be 3.12 acres. At his unit value per acre of $85,000, he computed the after value of the land to be worth $265,200. He estimated the cost of replacing the 10 lost parking spaces at $3,700. With this deduction, his final after taking value was $261,500. Damages, therefore, were estimated to be $16,500, the amount paid to the plaintiff. In recapitulation, the breakdown was as follows: fee taken — $7,650; improvements taken — $5,150; and cost to cure lost parking — $3,700; total $16,500.
"When part of a tract of land is taken for the public use, `just compensation' includes recovery for the part taken and for any damages visited upon the remainder which result from the CT Page 537-F taking. Bowen v. Ives, 171 Conn. 231, 236, 368 A.2d 82; Meriden
v. Highway Commissioner, 169 Conn. 655, 659, 363 A.2d 1091. Damages are measured by application of the `before and after rule.' Ibid. The court must `determine the difference between the market value of the whole tract as it lay before the taking and the market value of what remained of it thereafter.' Lefebrve v.Cox, 129 Conn. 262, 265, 28 A.2d 5. The court should consider any and all damages which will foreseeably follow from the proper construction of the project, including any damage to the remainder which is a necessary, natural and proximate result of the taking. Bowen v. Ives, supra; Budney v. Ives, 156 Conn. 83,88, 239 A.2d 182; Holley v. Torrington, 63 Conn. 426, 433,218 A. 613." Plunske v. Wood, 171 Conn. 280, 283-84.
The purpose of offering in evidence the opinions of experts as to the value of land is to aid the trier to arrive at his own conclusion, which is to be reached by weighing those opinions in the light of all the circumstances in evidence bearing upon value and his own general knowledge of the elements going to establish it. Birnbaum v. Ives, 163 Conn. 12, 20, 301 A.2d 262; Bennett v.New Haven Redevelopment Agency, 148 Conn. 513, 516, 172 A.2d 612. "In a condemnation case, the referee is more than a trier of facts or an arbiter of differing opinions of witnesses. `He is charged by the General Statutes and the decisions of this court with the duty of making an independent determination of value and CT Page 537-G fair compensation in the light of the circumstances, the evidence, his general knowledge and his viewing of the premises.'Birnbaum v. Ives, supra, 21." Bowen v. Ives, supra, 239.
The different elements of damage to the remaining property recoverable in addition to direct damages are as numerous as the possible forms of injury to it, but they must be reasonably said to have affected its market value just after the taking. SeeBowen v. Ives, supra, 231, 238.
The elements of the plaintiff's direct and severance damages due to the taking of November 23, 1994, are: (1) the loss of fee to 3,936 square feet along the entire street frontage of 393.6 feet for a depth of 3 feet in the rear to a depth of about 32.88 feet in the front at the entrance to the property; (2) loss of improvements in the taken area; (3) limitation or restriction of access by heavy-duty trucks to rear of building for maintenance of premises and service of electrical power cable and equipment; driveway between non-access highway and building greatly reduced in width; State property in rear of the building also non-accessible; and (4) relocation and paving of 10 parking spaces.
After viewing the site of subject property, and after giving due consideration to the opinions of expert witnesses and to a knowledge of the elements that establish value, I find that the CT Page 537-H before taking value of the subject property was $401,000 and that the after taking value is $372,500. Damages, therefore, are assessed at $28,500.
Judgment may enter for the plaintiff in the amount of $28,500, less $16,500 already paid, or an excess of $12,000, with interest on such excess at 8% per annum from the date of taking to the date of payment, together with costs and a reasonable appraisal fee of $2,500.
William C. Bieluch Judge Trial Referee