[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
DALY, JUDGE TRIAL REFEREE.
O'NEILL, JUDGE TRIAL REFEREE.
This proceeding is an appeal from the assessment of damage by condemnation that has come to the court on the wrong procedural track, to which it had been directed by the court clerk on instruction from the Civil Court Manager of the Court Operations Division. Instead of being entered on the court records as a separate civil action with payment of the entry fee required by General Statutes Section 52-259, this appeal and application for review of statement of compensation was filed, without payment of the statutory entry fee, as a further pleading in the above-numbered and titled court docket previously created for the deposit with the clerk of the Superior Court of the assessed damage in the amount of $325,390. See City of Bristol v.Sebastiano A. Milano et al., 45 Conn. Sup. 605.
Arthur J. Ruggiero, property owner, has appealed from the assessment of damage paid by the Commissioner of Transportation for the total taking by eminent domain on July 31, 1998, pursuant to General Statutes Sections 13a-73(b) and 13a-98e, of his property, with the buildings thereon, known as No. 1534 Main Street, situated in the Town of East Hartford, on the northerly side of Park Avenue and the southeasterly side of Main Street, U.S. Route 5, containing 14,058 square feet, more or less, bounded and described as follows, and shown on the map hereinafter referred to:
 SOUTHERLY — by Park Avenue, 125 feet; NORTHWESTERLY — by Main Street, U.S. Route 5, 153.60 feet; NORTHERLY — by land now or formerly of Donald Driscoll et al., 100 feet; and EASTERLY — by land now or formerly of Herbert G. Bryant et al., 142.45 feet.
CT Page 6714 Said premises are more particularly delineated on a map entitled: "TOWN OF EAST HARTFORD MAP SHOWING LAND ACQUIRED FROM ARTHUR J. RUGGIERO BY THE STATE OF CONNECTICUT DEPARTMENT OF TRANSPORTATION PARK AVENUE RECONSTRUCTION PROJECT APRIL, 1997 JAMES F. BYRNES, JR., P.E. — TRANSPORTATION CHIEF ENGINEER BUREAU OF ENGINEERING AND HIGHWAY OPERATIONS." Sheet 1 of 1 (42-280-2).
The owner has appealed under the provisions of General Statutes Section 13a-76. In the adjudication of this appeal and review of statement of compensation, the court heard evidence, including the testimony of witnesses and expert witnesses, examined appraisal reports and other documentary evidence, and viewed the subject property and its surrounding area.
The land is improved with a three bay gasoline station service station and one pump island. It was used by the owner for gasoline and oil sales, automobile repairs and vehicle sales. The land is at grade with both frontage streets and has a level topography. There are two driveways on Main Street and one on Park Avenue. The building was erected in 1968 and contains 1,980 square feet of area. It is one story, slab on grade, constructed of concrete block with brick veneer. There are three bays with individual lifts, a small office and two toilet rooms. Most of the land not occupied by the building is paved, poured concrete pads at the pump island and fillers and bituminous concrete elsewhere. All public utilities are available. Two light poles and a pole sign are on the property. The north boundary has a metal rail fence, and the east boundary has a wood privacy fence. There are two double wall steel 8,000 gallon tanks buried in the ground. These UST tanks have a leakage monitoring system and were registered with the Department of Environmental Protection when they were installed in 1989. The four double sided gasoline pumps on the service island are connected to these tanks.
There is a mechanical control signal at this intersection which permits safe and easy access and egress for vehicles. This is a positive site amenity for a gasoline station. The site is of a size, shape and location that is well suited for many automotive related uses. The location and construction of the building, and the presence of the tanks, pumps and site improvements, make the subject property particularly appropriate for a gasoline service station and for automotive repairs and sales. The subject is located in a Business (B-1) Zone. This zone permits a wide variety of commercial uses, but the use of these premises for a gasoline service station was a legally permitted CT Page 6715 nonconforming use, having predated current zoning regulations. This use was expanded by a variance approved on September 28, 1985, by the East Hartford Zoning Board of Appeals allowing the sale and service of used cars and trucks and the storage of motor vehicles on the premises.
The Town of East Hartford is located directly across the Connecticut River from the City of Hartford, the principal metropolitan district in the north central area of Connecticut. It is serviced by an extensive network of state and interstate highways constituting the gateway leading from Hartford to towns and cities in the northeastern quadrant of the state and beyond into Massachusetts and Rhode Island. Main Street, extends northward parallel to the river to towns north and northeast of East Hartford. It extends southward to the Pratt and Whitney Aircraft Division of United Technologies, the largest industrial employer in the Greater Hartford area, and beyond to the Town of Glastonbury. Ruggiero's gasoline service station was strategically located on this well-traveled road for the nature of its business on a divided highway with two lanes in each direction running from Pratt and Whitney Aircraft in the southern portion of town to the areas north and northeast of East Hartford, and west and northwest of Interstate Highway 84, which runs northeast from the center of town to Boston.
The neighborhood is bounded by Burnside Avenue to the south, School Street to the east, Goodwin Street to the north, and Main Street to the west. This is an area that is fully developed, with commercial and multi-family uses predominant on the arterial boundary streets, and residential uses, primarily one to three-family dwellings, on the side streets. These properties vary widely in age, size, style and condition.
Park Avenue parallels the trackage of CONRAIL approximately 0.2 mile to the east of Main Street, at which point industrial properties and warehouses predominant on the south side, with chiefly residential uses on the north side of the street. Park Avenue at its intersection with Main Street is a continuation of Prospect Street, a heavily traveled east-west route which bypasses the center of town 0.5 mile south on Main Street. Park Avenue terminates at School Street, near Prestige Park, a multi-tenant industrial park. It has one travel lane in each direction.
Main Street traverses the town of East Hartford south to CT Page 6716 north from Glastonbury, just north of the intersection of State Routes 2 and 3, to South Windsor, just south of the intersection with Interstate 291, with connections to Interstate Highways 91 and 84. As it passes through the subject neighborhood, Main Street is a divided roadway with two lanes in each direction and turning lanes at signaled intersections such as Park Avenue. In 1997, the average daily traffic count for Main Street in both directions just north of the subject property was 22,800 vehicles per day. This count was made by the state department of transportation.
Regular public transportation is routed along Main Street and Burnside Avenue, affording residents and others alternative access to downtown East Hartford and beyond, but primary transportation for area residents is private automobiles. The traffic signals along Main Street provide safe entry to and from side streets and frontage businesses.
It is agreed by the parties, and the court concurs, that the neighborhood is a heterogeneous mix of residential, commercial and industrial uses, all of which benefit from the mixture. The residential properties are generally modest and benefit from the proximity of employment, services and businesses in the area.
Environmental contamination of the subject property is evident. This is due to fuel and oil seepage over the years during the operation of the site as a gasoline service station. This has an adverse impact on its market value. The parties have stipulated that a reasonable estimate of the cost of remediation of this condition would be $26,610.
The highest and best use of the site is determined by the most profitable likely use to which a property can be put. It was the considered opinion of all appraisers that since the land is improved with an automobile sales and service building and the necessary facilities for the operation of a gasoline service station that still have a remaining economic life, the highest and best use of the property would be the continuation of the existing uses. With this the court concurs.
In support of their respective valuations for the parties, the two appraisers utilized the sales comparison approach. This approach is based upon the premise that comparable properties tend to indicate a range in which the subject property's value should fall. This methodology, sometimes referred to as the CT Page 6717 market approach, is based on an analysis of sales of comparable property, taking into consideration differences in size, zoning, use (present or potential), time, location, age, condition and physical characteristics. In this approach, the appraiser estimates the market value of the subject property by comparing it to similar properties that have recently sold or are under contract of sale. The appraiser compares all differences between the comparable properties and the subject and makes adjustments for these factors. Comparables are adjusted to the subject property being appraised. Adjustments are usually expressed in percentages, which are converted into dollar amounts and added to or subtracted from the known price of the comparable. Such adjustments, however, are the individual subjective judgments of the appraiser. The adjustments and their ratings are, therefore, subject to review as to their reasonableness. Additionally, the selection of comparable sales may be challenged or disputed as to their appropriateness. The results of a market analysis are usually tabulated and graphically compared in grid form. This court endorses the sales comparison method of valuation used by the appraisers in this case,
Both appraisals were prepared by local appraisers. The owner's appraiser was Bernard J. Hovanec. In his market analysis, four comparable sales were utilized. The first was the transfer of a gasoline service station and motor vehicle repair garage located at 295 Silver Lane, East Hartford, on October 13, 1995, for $475,000. The land is at grade with 175.73 feet frontage along Silver Lane and 110 feet frontage on Whitney Street. The building was constructed in 1950 and remodeled in 1970, and contains 1,890 square feet. It is one story, slab on grade, built of concrete blocks on the sides and rear with a brick faced front. There are three bays, but only two lifts, a small office and two lavatories. There are two 8,000 gallon gasoline tanks and two 500 gallon oil tanks, all inground. The average daily traffic count in April 1997 was 14,000 vehicles. Auto repairs have been discontinued on these premises.
This sale was considered by Hovanec to be the most comparable to the subject property, and was, therefore, given the most consideration or weight. The adjustments in his sale analysis were made in narrative form, and not in the usual preferred grid form. For that reason, these adjustments to the subject property being appraised were less distinguishable on review, especially in their balance to adjustments made in the other comparable sales analyzed in the appraisal. CT Page 6718
The adjustments made by the appraiser in his comparison of this sale to the subject property were as follows: 5% upward adjustment for inferior location; 5% upward adjustment for lack of approval to sell used cars; 3.5% downward adjustment for parcel of land with more frontage on the main roadway; for a net adjustment upward of 6.5%, or $30,875, indicating a value to the subject property of $505,875.
The second comparable sale was that of a gas station and motor vehicle repair garage located at 131 Darlin Street, East Hartford. The land sold on February 18, 1997, for the price of $365,000. To this he added $316,000, his valuation of the building, tanks, pumps and related equipment, for a total valuation of $681,000. Three adjustments made totaled 22% downward, or $149,820, indicating a value to the subject property of $531,180. The third comparable sale was that of a gas station and motor vehicle repair garage located at 75 Talcottville Road (Route 83), Vernon. This was transferred on March 21, 1996, for $340,000. The two adjustments made totaled 30% upward, or $102,000, indicating a value to the subject property of $442,000. The final comparable sale analyzed was that of a gas station and motor vehicle repair garage located at 708 Silas Deane Highway (Route 99), Wethersfield. This took place on August 14, 1995, for $375,000. The three adjustments made totaled 26.5% upward, or $99,375, indicating a value to the subject property of $474,375.
Based on the analysis of these four comparable sales, and giving most consideration to the first sale, this appraiser concluded that the indicated value of the subject property was $500,000. After deducting the cost to remediate contamination, estimated at $26,610, the market value of the subject property unimpaired was estimated to be $473,390, rounded to $475,000.
The Commissioner's appraiser was Donald P. Mullane. In his market analysis, three comparable sales were utilized. The first was the sale of property at 482 Main Street, East Hartford, a limited auto service operation descriptively known as Jiffy Lube, on June 10, 1997, for $313,750. The total adjustments made in his analysis for location, lube pits instead of lifts, age and condition, and lack of tanks and pump for the sale of gasoline was 15% upward, indicating a value to the subject property of $353,000. This upward value was only 12.5% if calculated by the total sale price, the methodology utilized by the owner's appraiser. Mullane limited his adjusted value in this sale and in CT Page 6719 all others in his appraisal of the subject premises to a comparison of the utility price paid per square foot of building area, or so-called building footprint. That was his unit of comparison in the analysis of comparable sales.
The second comparable sale was identical to the second sale analyzed by the owner's appraiser, that of 131 Darlin Street. In this analysis, however, he utilized only the land price of $365,000. Four adjustments were made for a total upward adjustment of 25%. By his calculation of building size only, which he calculated was 1,980 square feet, he concluded the indicated value of the subject property to be $348,500.
The third and final comparable sale was the same sale that the owner's appraiser found to be the most comparable sale and the one that he gave the most consideration and weight. That was the sale of a gas station and motor vehicle repair garage at 295 Silver Lane, East Hartford, on October 12, 1995, for $475,000. Where Hovanec's adjusted price comparing the full sale price indicated a value to the subject property of $505,875, Mullane's adjusted price, comparing only the square footage of the building, and after three adjustments downward totaling 30%, indicated a value to the subject property of $340,800.
Mullane's conclusion of value of the subject property, based principally on sale no. 1, weighted downward by his respective analyses of sales nos. 2 and 3 "and by other market data considered," was $350,000, "based upon the site as if clean."
A judge trial referee sitting as a court on appeals in condemnation cases is more than just a trier of fact or an arbitrator of differing opinions of witnesses. He is charged by the General Statutes and the decisions of our courts with the duty of making an independent determination of value and fair compensation in the light of all circumstances, the evidence, his general knowledge and his viewing of the premises. Minicucci v.Commissioner of Transportation, 211 Conn. 383, 388 (1989);Birnbaum v. Ives, 163 Conn. 12, 21-22 (1972); Feigenbaum v.Waterbury, 20 Conn. App. 148, 153 (1989). It is his task to reach a result that gives the plaintiff, as nearly as possible, a fair equivalent in money as just compensation for the property taken.Mathis v. Redevelopment Agency, 165 Conn. 622, 623 (1973);Feigenbaum v. Waterbury, supra, 153-54. In the performance of this duty, based upon all the circumstances, consideration of the evidence, general knowledge of the elements constituting value, CT Page 6720 and a viewing of the property and surrounding area, we find the value of the subject property to be $430,000.
Judgment may enter for the appellant in the amount of $430,000, less $325,390 previously paid, and also less cost to remediate contamination of $26,610, or a net of $78,000, with interest on such excess at the rate of 8% per annum, together with costs and a reasonable appraisal fee of $2,500.
William C. Bieluch John J. Daly Norris L. O'Neill Judge Trial Referees