[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This proceeding is an appeal from the assessment of damages incident to a condemnation. As with some recent decisions; see, e.g., Commissioner ofTransportation v. Connemara Court, L.L.C., 46 Conn. Sup. 623,763 A.2d 696, 27 Conn. L. Rptr. 479 (2000); Bristol v.Milano, 45 Conn. Sup. 605, 732 A.2d 835
(2000); the present case has also come to the court on the wrong procedural track, as a result of directions given by the court clerk on instructions from the civil court manager of the judicial branch division of court operations. It was not entered on the court records as a separate civil action and the entry fee required by General Statutes § 52-259 was not paid. Rather, this appeal and application for review of the statement of compensation was filed, without payment of the statutory entry fee, as a further pleading in the matter, having the above title and docket number, that previously had been created for purposes of depositing with the clerk of the Superior Court, the assessed damages in the amount of $300,000. See Commissioner ofTransportation v. Connemara Court, L.L.C., supra, 623; Bristol v.Milano, supra, 605.
Stanley B. Frank and Jean P. Frank, property owners, have appealed from the assessment of damages paid by the Commissioner of Transportation (COT) for the total taking by eminent domain on July 27, 2000, pursuant to the provisions of General Statutes § 13a-73 (b), of the premises hereinafter described found to be necessary for the layout, alteration, extension, widening, change of grade, and improvement of the highway commonly known as Freshwater Boulevard, Conn. Route 220. Said premises, together with the building and appurtenances located thereon, situated in the Town of Enfield, County of Hartford and State of Connecticut, on the northerly side of Present Elm Street, Conn. Route 220, containing 18,120 square feet, more or less, are bounded and described as follows, and shown on the map hereinafter referred to:
SOUTHERLY — by Present Elm Street, Conn. Route 220, 88.26 feet,
WESTERLY — by land now or formerly of Philip M. Caron, 205.30 feet;
 NORTHERLY — by land now or formerly of Melvin Smith et al., 88.26 feet; and
 EASTERLY — by lands now or formerly of Margaret L. Johansen et al, and Clifford F. Angelica et al., each in part, 205.30 feet. CT Page 13468-hy
Said premises are more particularly delineated on a map entitled: TOWN OF ENFIELD MAP SHOWING LAND ACQUIRED FROM STANLEY B. FRANK ET AL. BY THE STATE OF CONNECTICUT DEPARTMENT OF TRANSPORTATION INTERSECTION IMPROVEMENTS ON CT. ROUTE 220 AT FRESHWATER BOULEVARD June 1999 JAMES F. BYRNES, JR. P.E. — TRANSPORTATION CHIEF ENGINEER BUREAU OF ENGINEERING AND HIGHWAY OPERATIONS". "Sheet 1 of 1, (48-171-3). This is a Total Take."
Enfield is the largest town situated on Interstate Highway I-91 between Hartford, 18 miles to the south, and Springfield, Massachusetts, 8 miles to the north. A former mill town surrounded by agricultural and tobacco farms, it now has small factories, some of national and international fame, and expanding shopping centers and retail chain and local stores and services that have followed the routing of I-91 and the improvement of its arterial highways, such as State Route 220, Freshwater Boulevard. One such retail store attracted to this shopping area cluster was Gem Jewelers, owned by the appellants and constructed in 1993 on the condemned premises at 127 Elm Street.
The subject property consists of 18,120 square feet of land, being 0.416 acre, with 88.26 street frontage on the north side of Elm Street, a short distance east of exit 48 off I-91. Located on the premises is a frame building, with a brick veneer front and vinyl siding, containing 1,254 square feet on the first floor devoted to the retail jewelry salesroom, brightly lighted floor and wall display cases, office, workshop, washroom and lavatory. A second story consisting of 900 square feet contained a utility and lunch room and storage areas. Appropriate to its dedicated special use as a jewelry store, the premises were observed to be in a very good condition, reflecting continuous maintenance over the six plus years from its construction,
The site chosen by the Franks for the location of their jewelry store was an excellent choice, one that continued to improve with the progressive commercial development of the area, until it was forced to close by the taking of the subject premises. There was a very high volume of traffic from the surrounding commercial and residential areas flowing in three directions in front of the property. Freshwater Boulevard, a major artery of commercial traffic, intersected Elm Street across from the premises, and I-91 was a short distance to the west.
The property was purchased by the appellants in September of 1993 for the sum of $205,000 for the sole purpose of operating a retail jewelry in that developing commercial area. Although the property was located in a CT Page 13468-hz Residence 33 (R-33) Zone, its use as a retail jewelry store was legally non-conforming, having previously been used as a package store, a non-conforming use. Upon acquisition, the existing building, with the exception of one wall, was demolished and the Franks constructed the subject building as a jewelry store, with high quality custom built fixtures and furnishings, and site improvements to the land. Frank estimated that it cost a total of approximately $450,000 to acquire the land, demolish the former structure, construct the new building and jewelry store, and make the necessary site improvements. These site improvements consisted of 5,000 square feet of amesite paving in the front and side yards; 72 linear feet of amesite curbing; 144 square feet of concrete walk; two drainage systems with drywells; two large flower planters; 4,800 square feet stone covered rear yard parking area; five precast concrete parking bumpers; 336 linear feet of 6 feet high stockade fence on three sides of the rear parking lot; one freestanding sign; and a flagpole about 25 feet high in the westerly side yard, visible from the front and street by passers-by.
In its first year of operation, the store grossed approximately $1,000,000 in sales. By the time of the taking, the gross had about doubled in amount. The owners' appraiser found the highest and best use of the property to be its continued present use as a jewelry store. The court concurs in this opinion. The highest and best use of the subject property is the keystone of its valuation. The highest and best use is: "That reasonable and probable use that supports the highest present value of vacant land or improved property, as defined, as of the date of appraisal." 9 P. Nichols, Eminent Domain (3d Ed. Rev. 1999) App. B2 (h)-20, p. 14, quoting The Dictionary of Real Estate Appraisal, published by the American Institute of Real Estate Appraisers.
The court does not accept the stretch and depreciation of the State's appraiser to this important factor in the valuation of the property. The State's appraiser stated in broad general terms that the highest and best use of the site is for the "continuation of the current use of the property as a retail store property." A successful jewelry location is unique among retail store properties. The luster of a successful jewelry store in a retail complex and area is of appreciable value to its location. One might say, the Franks had a "gem" in their subject location.
The owners' appraiser based his estimate of the market value of the land upon a sales comparison approach. He analyzed the commercial land sales of: (1) 74,052 square feet, at 95 Freshwater Boulevard, a nearby property, zoned Business Local, sold on October 18, 1999, for $1,350,000, CT Page 13468-ia as a site for a new CVS drug store; (2) 21,344 square feet, at 140 Elm Street, also nearby, zoned Business Local, sold on February 4, 2000, for $265,000; and (3) 59,175 square feet, at 875 Enfield Street, a short distance from subject, zoned Business Local, sold on April 9, 1999, for $635,000, as a site for a new CVS drug store. At the average adjusted unit price of $13.00 per square foot, he calculated the likely sale price of the subject land to be $236,600, rounded to $237,000. The itemized site improvements to the land he valued at $27,000. Using the Marshall Valuation Service, "Class C Very Good Retail Store," segregated cost method in estimating the cost of the building, he calculated its value to be $223,000. In recapitulation, he found the total fair market value of the land, its site improvements and the building to be $487,000.
The State's appraiser based his value of the subject land on three sales of commercial land in Enfield and Manchester: (1) 59,175 square feet, at 6 Elm Street, Enfield, zoned Business Local, sold on April 9, 1999, for $635,000, plus demolition costs of $25,000, for a retail plaza anchored by a drug store; (2) 1.5 acres, or 65,340 square feet, at 410 Broad Street, Manchester, zoned Business B-2, sold on May 5, 1999, for $600,000, for retail development; and (3) 28,864 square feet, at 350 Buckland Street, Manchester, zoned Business III, sold on June 24, 1998, for $288,803, for retail development. After adjustments he considered appropriate, these sales ranged from $9.02 per square foot to $9.93 per square foot, indicating that $10.00 per square foot was the best and most reasonable value for the subject land of 18,120 square feet, for a total land value of $180,000. In reaching this value, he concluded: "The major drawback with regard to the subject property is its zone. While the use of the subject property is allowed by prior use, it is technically not in a business zone, and re-use, expansion and conversion is limited." In this perspective of the subject property, he deviated from the preamble of the doctrine of fair market value: "The fair market value of realty is determined in light of the use to which it is being put at the time ofthe taking or to which it could he put most advantageously's (Emphasis added.) Transportation Plaza Associates v. Powers, 203 Conn. 364,375-76.
The State's appraiser utilized the Marshall Valuation Service, Class C Good Retail Store," in estimating the depreciated value of the improvements. The building structure with alarm system and covered walkway were valued at $96,415; the glass, island and wall display cases were valued $20,737; and the site or yard improvements were valued at $40,037; for a total value of improvements of $157,189. By adding this value of the improvements to the value of the land previously obtained by comparable sales, he concluded that the value of the subject property by CT Page 13468-ib the cost approach was $337,189, which he rounded and reduced to $335,000.
A second valuation of the subject property was obtained by the State's appraiser's utilization of the sales comparison approach. For this purpose he compared the sales of three properties in Enfield: (1) 171 Elm Street, consisting of a 5 room residence converted to a retail store, then vacant, zoned B.R. Business, sold on June 29, 1999, for $142,500, or $141.37 per square foot of gross building area; (2) 5 Enfield Street, consisting of an automobile repair garage, zoned Business Local, sold on July 30, 1999, for $265,000, or $191.26 per square foot of gross building area; and (3) 1537 King Street, consisting of a 2 room church school, zoned Business Local, sold on August 13, 1998, for $220,000, or $135.05 per square foot of gross building area. At the average adjusted unit price of $217 per square foot of gross building area for the first floor area of 1,254 square feet only, he calculated the subject property to be valued by the sales comparison approach at $263,340, rounded to $265,000. Reconciling this valuation with his previous valuation by the cost approach of $335,000, he concluded that the value of the subject property was $300,000, the amount paid on deposit with the court.
The subject property is a recently built custom-made free-standing jewelry store constructed for its specific use by the Franks six and one-half years before its taking. The Franks purchased the property at 127 Elm Street, formerly used as a package store, on September 21, 1993, for the price of $205,000, for the purpose of establishing a jewelry store in the commercial area developing in that portion of town surrounding the Enfield exits off Interstate I-91. The building existing on purchase was demolished by them, with the exception of one wall for the apparent purpose of preserving the legal zoning noncomformance. They thereafter constructed the existing building with fixtures and furnishings customized for a modern retail jewelry store. Frank's estimate of the total cost for the start of their jewelry business was $450,000.
In the relevant conclusion of the State's appraiser: "Also to be considered are the specialized display cases that are tailor-made for the subject building. These are expensive cases made to fit a salesroom, and salvage value is negligible compared to their cost new. These cases were custom-made for the subject property, and are affixed to the building so as to be considered fixtures." Notwithstanding this appropriate description by the State's appraiser, their valuation of $20,737 by him does not meet their representation. The property's inspection by the panel confirm's the store's obvious extravagance befitting the nature and CT Page 13468-ic quality of its product. The sales, island and wall display cases were custom built for the showing of jewelry in a luxury setting appropriate to its value. They were individually designed in conjunction with interior lighting brightly focused to accentuate the brilliance of jewelry on display for sale. They were not prefabricated or mill-built cases. The display cases were specifically designed and built to be incorporated as showroom fixtures in a modern jewelry store. The building and its fixtures were constructed for long service, without anticipation of an abrupt termination by the State's takeover a few years later.
The subject property was unique in its construction and use as a free-standing custom-made jewelry store in a non-competitive excellent location, with an extremely high volume of traffic, necessitating the State's takeover, from the surrounding retail, commercial, and residential areas, moving in three directions, east, west and south, in front of the prominently displayed jewelry store. Its uniqueness is evident in that neither appraiser was able to find a comparable sale of property occupied or used as a jewelry store. Buildings that are uniquely constructed or adapted for a specialized use, such as the case at issue, are held to be unique or special properties. In these cases fair market value may be difficult to establish. Comparable sales are often not available. To meet this unique problem, courts have specifically authorized the use of reproduction or replacement cost as the proper approach to the valuation of unique property. This is in contrast to the general rule that buildings and land are to be valued as a unit. 4 P. Nichols, Eminent Domain (3d Ed. Rev. 1999) § 13.02[6][b], pp. 13-25-26.
It is probative that Franks' appraiser utilized this summation method of valuation as appropriate for the unique property taken by the State, which he estimated to be $487,000. The State's appraiser initially adopted the same method and estimated the property value to be $337,189, which he reduced by rounding to $335,000. A further reduction in value to $263,340, which he rounded to $265,000 was achieved by him in a second appraisal of the building and land as a unit. The subjective use of both methods to accomplish a split of the difference between the two valuations, or $300,000, was not an objective valuation of the subject property. The use of the two methods of valuation by the State's appraiser casts a reflected shadow on each valuation of the property, as well as on the average between them.
"Under our law, a [judge trial] referee sitting as a court on appeals in condemnation cases is more than just a trier of fact or an arbitrator of differing opinions of witnesses. He is charged by the General Statutes and the decisions of [the Supreme Court] with the duty of making an CT Page 13468-id independent determination of value and fair compensation in the light of all the circumstances, the evidence, his general knowledge and his viewing of the premises." (Internal quotation marks omitted.) Minicucciv. Commissioner of Transportation, supra, 211 Conn. 388; Birnbaum v.Ives, 163 Conn. 12, 21-22, 301 A.2d 262 (1972); Feigenbaum v. Waterbury,20 Conn. App. 148, 153, 565 A.2d 5 (1989). It is his task to reach a result that gives the plaintiffs, "as nearly as possible, a fair equivalent in money as just compensation for the [property] taken. . . ."Mathis v. Redevelopment Agency, 165 Conn. 622, 623, 345 A.2d 33 (1973);Feigenbaum v. Waterbury, supra, 153-54.
The elements of the owners' damage due to the taking of July 27, 2000, are: (1) loss of fee to entire property at 127 Elm Street, Enfield, being 18,120 square feet of land, with a frontage of 88.26 feet on Elm Street, State Route 220, in a developing commercial and local shopping area a short distance from I-91 entrance and exit ramp No. 48; (2) loss of a free-standing frame building, with brick veneer front and vinyl siding, containing 1,254 square feet on the first floor devoted to the retail jewelry salesroom, 125 square feet of wall display cases, 85 feet of counter display cases, 23 feet of counters, less salvage value, all brightly lighted, office, workshop, washroom and lavatory, and a second story consisting of 900 square feet containing a utility and lunch room and storage areas, with security, fire alarm and telephone systems, 150 square feet of open porch and 35 square feet of closed porch; (3) site improvements consisting of 5,000 square feet of amesite paving in the front and side yards, 72 feet of amesite curbing, 144 square feet of concrete walk) two drainage systems with drywells, landscaping with two large flower planters, 4,800 square feet stone covered rear yard parking area; five precast concrete parking bumpers, 336 feet of 6 feet high stockade fence on three sides of the rear parking lot, 50 feet of 6 feet high vertical board fence, 2 yard security lights on poles, one free-standing identification sign, and a flagpole about 25 feet high.
In the performance of this duty, based upon all the circumstances, due consideration of the evidence and the opinions of expert witnesses, general knowledge of the elements constituting value, and a viewing of the property, nearby office and commercial developments and the surrounding area, the court finds the value of the subject property to be $396,724, rounded to $397,000.
Judgment may enter for the appellant in the amount of $397,000, less $300,000 previously paid, or an excess of $97,000, with interest on such excess at 8% per annum from the date of taking on July 27, 2000, to the date of payment, together with costs and a reasonable appraisal fee of $1,000. CT Page 13468-ie
William C. Bieluch
Jerry Wagner
Norris L. O'Neill Judge Trial Referees