[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This proceeding is an appeal from the assessment of damages by condemnation that has come to the court on the wrong procedural track, to which it had been directed by the court clerk on instruction from the Civil Court Manager of the Court Operations Division. Instead of being entered on the court records as a separate civil action with payment of the entry fee required by General Statutes § 52-259, this appeal and application for review of statement of compensation was filed, without payment of the statutory entry fee, as a further pleading in the above-numbered and titled court docket previously created for the deposit with the clerk of the Superior Court of the assessed damages in the amount of $2,200. See City of Bristol v. Sebastiano A. Milano et al.,45 Conn. Sup. 605. CT Page 1481
Randall M. Knight and Lynn A. Knight, property owners, have appealed from the assessment of damages paid by the Commissioner of Transportation for the partial taking by eminent domain on August 12, 1999, pursuant to the provisions of §§ 13a-73(b) and 13a-73(e) of the General Statutes, of their premises hereinafter described found to be necessary for the layout, alteration, extension, widening, change of grade, drainage, reconstruction and improvement of the highway commonly known as present Windham-Canterbury Road, Connecticut Route 14/97. Said premises are located in the Town of Scotland on the northerly side of the present Windham-Canterbury Road, containing 4, 056 square feet, more or less, bounded and described as follows:
SOUTHERLY — by the present Windham-Canterbury Road, Route 14/97, 486.70 feet, more or less;
WESTERLY — by land now or formerly of Raymond A. Shafer et al., 7 feet, more or less.
NORTHERLY — by Owners' remaining land, 503 feet, more or less, by a line designated "Taking Line," as shown on the map hereinafter referred to; and
EASTERLY — running to a point.
Said premises were taken together with the following easements and rights under, over and across portions of Owners' remaining land:
A full and perpetual easement to slope for the safety of the highway and remove, use or retain excavated material within an area of 5,791 square feet, more or less, located between and opposite approximate Stations 1 + 450 and 1 + 5 80, left, Base Line, present Windham-Canterbury Road, Route 14/97, as more particularly shown on said map.
A full and perpetual drainage right of way easement within an area of 849 square feet, more or less, located between and opposite approximate Station 1 + 445 and Station 1 + 458.2, left, Base Line, present Windham-Canterbury Road, Route 14/97, as more particularly shown on said map.
An easement for a temporary work area within an area of 3,260 square feet, for the construction of a road for temporary relocation of Route 14/97 including the right to install all necessary appurtenances CT Page 1482 thereto, said easement to automatically terminate upon completion of the reconstruction of Route 14/97, unless sooner released by the State. The temporary easement taken under this paragraph will be restored by removal of all temporary installations and by grading and seeding the area as shown on the construction plans to match the approximate slope limits.
A right of entry to remove driveway and restore area with suitable material and seeding, relocate box wire fence and construct new driveway as more particularly shown on said map. Said right shall terminate upon completion of said work by the State.
Said premises are more particularly delineated on a map entitled: "TOWN OF SCOTLAND MAP SHOWING LAND ACQUIRED FROM RANDALL M. KNIGHT ET AL BY THE STATE OF CONNECTICUT DEPARTMENT OF TRANSPORTATION RECONSTRUCTION OF CONN. ROUTE 14/97 JULY 1998 JAMES F. BYRNES, JR., P.E. — TRANSPORTATION CHIEF ENGINEER BUREAU OF ENGINEERING AND HIGHWAY OPERATIONS." Last Revised 1/1 1/99, Sheet 1 of 1 (123-64-2).
At the inspection of the property with counsel, the court observed that the restoration of the property required by the terms of the Certificate of Taking and its referenced map appeared to be inadequate. As a result of the court's inquiry made at that time, the parties subsequently filed a stipulation of further facts for the consideration of the court in its assessment of damages as follows:
1. The extra boulders and felled trees in the front yard will be removed by the State;
2. The contractor has been directed to restore the soil and seeding in the area complained about by the owners;
3. As the owners were compensated for the loss of trees as part of the State's damage estimate, there is no planting plan for this project;
4. As the owners were compensated for the loss of the stone wall and trees as part of the State's damage estimate, it will not plant a stand of apple trees along the new driveway;
5. The contractor will replace the pasture fence with "new" livestock type fencing;
6. If the area on the west side of the house is impacted by this project, the livestock fence on that location will be replaced; and
7. The contractor will grade and seed the area of the well replacement. CT Page 1483
The court will assume in this decision that the stipulated work that should have been completed before the court's inspection of the taking site will now be satisfactorily completed promptly this year as the weather pennits. Otherwise, this judgment will be subject to be opened under the rules of practice without payment of the statutory fee for necessary modification by the court as may be required.
Prior to the taking, the subject property consisted of a 5.2 acre, more or less, parcel of Residential Agriculture (RA) zoned land improved with a single-family residence known as 50 Palmer Road and four outbuildings. As a result of the taking of 4,056 square feet of land, more or less, being 0.093 of an acre, the remaining site consists of 5.107 acres, more or less.
Scotland is a small rural community in Windham County in the eastern portion of the state. The area of the town is 18.7 square miles. Its population is 1,397. It is primarily an agricultural community of farms with residential homes for families and people working in neighboring towns. The entire community has no municipal water or sewers. The property is located on the main road within the town of Scotland. This road has a higher volume of traffic at higher speeds than most residential locations ordinarily do. State Route 14 runs through the town connecting Willimantic and Hartford to the eastern part of the state. Route 97 runs north and south through the town connecting to Route 52 and Interstate Highway 395. The two state highways meet and merge for a short distance along the frontage of the subject property, hence the designation Route 14/97. The traffic on this combination of highways at the time of viewing was heavy and dangerous to the viewers on the roadway at the site.
It was to improve traffic safety in the area of the subject property that a portion of the property was taken and the elevation and grade of the roadway were reduced. The pavement of the highway was lowered about eight feet in front of the subject property resulting in a compensating slope of the property along the roadway. Before the taking the frontage of the property was at road grade.
The frontage had a dense growth of twenty-five mature maple trees ranging from 8 inch to 30 inches in circumference, a stone wall, and box-wire fencing. The subject property conformed to all dimensional requirements within the RA Zone before and after the taking. The improvements consisted of a nine-room single-family residence having four bedrooms and four outbuildings. The utilities available consisted of public electricity and telephone service and private well and septic sewer system. The property's residential use is expanded with a small sheep raising farm project. CT Page 1484
The owners' appraiser considered the present residential and adjunct farm use for the raising of sheep to be the highest and best use of the subject property. The State's appraiser considered the present residential use of the property to be its highest and best use. The court finds that the highest and best use of the subject property is the continuation of its present use and facilities as a residence with agricultural use of the land and outbuildings for the raising of sheep.
Both appraisers utilized the sales comparison approach in valuing the subject property., The cost approach and income capitalization approach were not considered applicable to the valuation of the subject property. The court agrees with this method of valuation.
The owners' appraiser, Richard H. Barry, analyzed three comparable sales, all in Scotland, within one-half to one mile of the subject property, and containing 1.5 to 4.25 acres in area. All of them were zoned Residential Agriculture. In his adjustments before the taking, he emphasized that of the comparable properties, only the subject had mature trees which afforded privacy and reduced road noise. For that reason he made a positive adjustment in the value of the subject property of $15,000. With adjustments for other usual appraisal factors, he estimated the before taking value of the subject premises at $183,000, or $0.81 (81¢) per square foot.
In describing the taking, Barry expanded its legal description in the Certificate of Taking by detailing its results on the subject property. Specifically, he noted that the taking included 21 mature sugar-producing maple trees along the frontage west of the driveway ranging from 8 inches to 30 inches in circumference, as well as dense undergrowth; and 4 red maple trees ranging from 10 inches to 24 inches in circumference, as well as dense undergrowth, east of the driveway. The taking also resulted in the loss of 0.5 acre of pasture, a 150 foot stone wall, and 132 feet of box wire fencing. The former highway fronting the property was lowered as follows: at Station 1 + 480 — 4.25 foot cut; at Station 1 + 500 — 5.25 foot cut; at Station 1 + 520 — 8.0 foot cut; at Station 1 + 540 — 6.9 foot cut; at Station 1 + 560 — 2.3 foot cut; and at Station 1 + 580 — 2.0 foot cut. This reduction of grade created a steep bank along the frontage at a ratio of 1:2. Finally, on the north side of the new road along the entire frontage of the subject property there was a temporary road during construction to permit the heavy traffic to flow without detour.
Barry concluded that after the taking, the subject property lost 25 mature maple trees along the frontage which had provided the owners with a barrier for traffic CT Page 1485 noise and an obstruction to viewing of the highway and vehicles traveling by. After the taking, the noise barrier was now gone and the dwelling could be seen from the highway. A steep bank has been created along the frontage of the property. This has required the relocation of the owners' driveway and destroyed 0.5 acre of sheep pasture land. Further, a stone wall on the front of the property has been destroyed and the stones removed from the premises. Finally, the remaining property after the loss of 4,056 square feet of frontage and an undetermined amount of subsoil is now 6 to 8 feet above the road grade with a very steep (1: 2) bank in its front yard along the roadway.
In estimating the after taking value of the remainder, the appraiser utilized the same three local comparable sales as in the before taking analysis, but with a substantial negative adjustment for the lack of screening of the highway due to the loss of 25 mature maple tree which had given the subject property privacy and screened road noise, and for the creation of a steep bank along the property frontage. A slope now replaced the trees. As a result of these devaluating factors, he calculated the after taking value of the subject property to be $163,000. The value difference of $20,000 after the taking he concluded to be the permanent damage to the remainder of the subject property. In addition, he found the temporary damage from the temporary roadway at the property line during construction to be $5,000, for total damages of $25,000 due to the taking.
The Commissioner's appraiser, Michael J. Corazzelli, a staff appraiser for the Department of Transportation, made two appraisals of the subject property. In his appraisal made on November 5, 1998, he found the total damages to be $2,200, the amount deposited by the Commissioner with the court and paid to the owners at the beginning of this proceeding. The sales comparison approach was developed utilizing sales of similar land. Only wooded raw land sales were utilized as comparables in his appraisal. From his review of the local market, he concluded that the market value of the subject land was 14¢ per square foot. With this valuation, the before taking value of the subject parcel of 5.2 acres came to $31,712. This calculation of total value, however, he did not make in his first valuation CT Page 1486 analysis. A grid or analysis of this land appraisal was not provided in his earlier or letter format appraisal. In summary fashion, his valuation was shown as follows:
1. Taking area: 4,056 sq. ft. x $.14 = $568.
2. Drainage Right of Way: 849 sq. ft. x $.14 x .75 = $89.
3. Easement to Slope: 5,791 sq. ft. x $.14 x .25 = $203.
 4. Easement for Temporary Work Area and Road: 3,260 sq. ft. x $.14 x .10 x 2years = $91.
5. Contributory Value of Trees and Stone Wall: = $1,000.
 6. Replacement Value of Fence: = $250. TOTAL = $2,201. ROUNDED = $2,200.
Corazzelli's final report of August 12, 1999, was in the usual form. He described the property as located on a main road (Route 14/97) within the Town of Scotland, noting that this road has a higher volume of traffic at higher speeds than most residential locations. Based on the present zoning and economic conditions in the area, the subject's residential use was considered its highest and best use. Its agricultural use was not recognized. His appraisal was of the land portion of the subject property only, for which he used wooded raw land acreage as comparable sales, this notwithstanding the subject contained a dwelling. Because of its setback location on the land, he concluded the dwelling was not affected by the taking and associated highway work. With this conclusion, the court disagrees.
The three comparable land sales were all wooded parcels located in Scotland: (1) 11.93 acres on Hanover Road; (2) 4.55 acres on Palmer Road (Route 14); and (3) 8.53 acres on Parish Hill Road. With adjustments for location, site/view and topography, he found the subject land site before the taking to be $32,400, slightly higher than the $31,712 valuation estimated in his earlier appraisal at 14¢ per square foot. This was explained by his rounding of the indicated value of 14.3¢ per square foot to 14¢ per square foot. In his after taking analysis, he estimated the after taking value of the subject parcel of land at $30,200, resulting in damages to the property owners of $2,200.
The detailed damage estimate previously furnished in his earlier report was now repeated, but explained as follows: The actual taking area was calculated at the full $0.14, while the drainage right of way and CT Page 1487 easement to slope were adjusted downward to reflect lesser impact for those areas. The easement for the temporary work area and road were based on an estimated rental value of the land being 10%, and this he applied to the relevant two year time period. The contributory value of the trees and stone wall were based on his best estimate of their actual contribution to the overall value of the site. The replacement value of the fence was determined through cost research at area hardware stores. "The setback of the house is such that [he] does not believe that any further value loss will occur that is attributable to the road work other than the actual area effected (sic)."
"When only a part of a tract is taken for the public use, `just compensation' includes recovery for the part taken and recovery for any damages visited upon the remainder which result from the taking. Bowenv. Ives, 171 Conn. 231, 238, 368 A.2d 82; Meriden v. HighwayCommissioner, 169 Conn. 655, 659, 363 A.2d 1094. "The ordinary rule for measuring damages where a portion of a tract of land is taken is to determine the difference between the market value of the whole tract as it lay before the taking and the market value of what remained of it thereafter, taking into consideration the changes contemplated in the improvement and those which are so possible of occurrence in the future that they may reasonably be held to affect market value.' Lefebrve v.Cox, 129 Conn. 262, 265, 28 A.2d 5 [1942]. The court should consider any and all damages which will foreseeably follow from the proper consideration of the project, including any damage to the remainder which is a necessary, natural and proximate result of the taking. Budney v.Ives, 156 Conn. 83, 88, 239 A.2d 842." D'Addario v. Commissioner ofTransportation, 172 Conn. 182, 184-85, 374 A.2d 163 (1976); Darling v.Waterford, 7 Conn. App. 485, 486 (1986).
Under our law, a judge trial referee sitting as a court on appeals in condemnation cases is more than just a trier of fact or an arbitrator of differing opinions of witnesses. He is charged by the General Statutes and the decisions of our courts with the duty of making an independent determination of value and fair compensation in the light of all the circumstances, the evidence, his general knowledge and his viewing of the premises. Minicucci v. Commissioner of Transportation, 211 Conn. 382, 388
(1989); Birnbaum v. Ives, 163 Conn. 12, 21-22 (1972); Feigenbaum v.Waterbury, 20 Conn. App. 148, 153 (1989). It is his task to reach a result that gives the plaintiffs, as nearly as possible, a fair equivalent in money as just compensation for the property taken. Mathisv. Redevelopment Agency, 165 Conn. 622, 623 (1973); Feigenbaum v.Waterbury, supra, 153-54.
The elements of the owners' damages due to the taking of August 12, 1999, are: (1) loss of fee to 4,056 square feet, more or less, fronting CT Page 1488 on Windham-Canterbury Road, Route 14/97, a heavily traveled primary road for through traffic north and south, and east and west, in Scotland, including the entire frontage of 486.70 feet of the subject property, and being 0.093 of an acre; (2) a full and perpetual drainage right of way over 849 square feet in the southwest corner of the frontage on the highway; (3) a full and perpetual easement to slope 5,791 square feet located between and opposite approximate Stations 1 + 450 and 1 + 580, left, base line, being almost the complete frontage on the highway and resulting in ground cuts from 2.0 feet to 8.0 feet, and creating a very steep bank at 1:2 grade; (4) the required relocation of the straight driveway from in front of the garage to a curved driveway about 70 feet to the east, also thereby destroying about 0.5 acre of sheep pasture land; (5) the removal and loss of a stone wall about 150 feet in length; (6) the loss of 21 mature sugar producing trees ranging from 8 inches to 30 inches in circumference and 4 red maple trees ranging from 10 inches to 24 inches in circumference along the frontage; and (7) an easement for a temporary work area of 3,260 square feet for the construction of a roadway for the temporary relocation of Route 14/97, including the right to install all necessary appurtenances thereto, which easement terminated automatically upon completion of the reconstruction of Route 14/97 in two years.
After viewing the site of the subject property, and after giving due consideration to the opinions of expert witnesses and to a knowledge of the elements that establish value, I find that the before taking value of the subject property was $180,000, and that the after taking value of the subject property is $167,200. Damages, therefore, are assessed at $12,800.
Judgment may enter for the appellants in the amount of $12,800, less $2,200 previously paid, or an excess of $10,600, with interest on such excess at 8% per annum from the date of taking on August 12, 1999, to the date of payment, together with costs and a reasonable appraisal fee of $2,100.
William C. Bieluch Judge Trial Referee