[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORAMDUM OF DECISION
This proceeding is an appeal from the assessment of damages incident to a condemnation. As with some recent decisions; see, e.g., Commissioner ofTransportation v. Connemara Court, L.L.C., 46 Conn. Sup. 623, 763 A.2d 696
(2000); Bristol v. Milano, 45 Conn. Sup. 605, 732 A.2d 835 (2000); the present case has also come to the court on the wrong procedural track, as a result of directions given by the court clerk on instructions from the civil court manager of the judicial branch division of court operations. It was not entered on the court records as a separate civil action and the entry fee required by General Statutes § 52-259 was not paid. Rather, this appeal and application for review of the statement of compensation was filed, without payment of the statutory entry fee, as a further pleading in the matter, having the above title and docket number, that previously had been created for purposes of depositing with the clerk of the Superior Court, the assessed damages in the amount of $3,375. See Commisioner of Transportation v. Connemara Court, L.L.C., supra, 623; Bristol v. Milano, supra, 605.
William H. Wilson, property owner, has appealed from the assessment of damages paid by the Commissioner of Transportation (COT) for the partial taking by eminent domain on March 27, 1998, pursuant to Sections 13a-73(b),13a-73(e) and 13a-98e of the General Statutes, of the premises hereinafter described found to be necessary for the layout, alteration, extension, widening, change of grade, and improvement of the highway commonly known as East Street. Said premises consist of two parcels of land and are situated in the Town of East Granby, on the northwesterly and southeasterly side of East Street, bounded and described as follows, and shown on the map hereinafter referred to:
Parcel "A", containing 7, 706 square feet, more or less, located on the southeasterly side of East Street:
NORTHWESTERLY — by East Street, a total distance of 826.38 feet, more or less;
NORTHEASTERLY — by land now or formerly of General Financial Services, Inc., 11 feet, more or less; CT Page 12733
SOUTHEASTERLY — by Owner's remaining land, a total distance of 828.19 feet, more or less, by a line designated "Taking Line", as more particularly shown on said map; and
SOUTHWESTERLY — by land now or formerly of General Financial Services, Inc., 9 feet, more or less.
Parcel "B", containing 4,972 square feet, more or less, located on the northwesterly side of East Street:
SOUTHEASTERLY — by East Street, a total distance of 598 feet, more or less;
SOUTHWESTERLY — running to a point;
NORTHWESTERLY — by Owner's remaining land, a total distance of 594 feet, more or less, by a line designated "Taking Line", as more particularly shown on said map;
NORTHEASTERLY — by land now or formerly of Alice Stanley Young 10 feet, more or less.
Said premises are taken together with the following easements and rights under, over and across portions of Owner's remaining land:
1. A full and perpetual drainage right of way easement within an area of 501 square feet, more or less, located between and opposite Station 1+198 and approximate Station 1+206 left, Base Line, Present East Street, as shown on said map.
2. A full and perpetual drainage right of way easement within an area of 909 square feet, more or less, located between and opposite approximate Station 1+201 and Station 1+214 right, Base Line, Present East Street, as shown on said map.
3. A full and perpetual drainage right of way easement within an area of 399 square feet, more or less, located between and opposite approximate Station 1+648 and Station 1+655.5 left, Base Line, Present East Street, as shown on said map.
4. A full and perpetual easement for sight line within an area of 1,933 square feet, more or less, and located between and opposite Station 1+405.2 and approximate Station 1+457, right, Base Line Present East Street, as shown on said map.
5. A right of entry for the purpose of installing sedimentation control CT Page 12734 systems, constructing driveways and grading, as more particularly shown on said map. Said right shall terminate automatically upon completion of said work by the State.
Said premises are more particularly delineated on a map entitled: "TOWN OF EAST GRANBY MAP SHOWING LAND ACQUIRED FROM WILLIAM H. WILSON BY THE STATE OF CONNECTICUT RECONSTRUCTION OF EAST STREET SCALE 1:500 MAY 1997 JAMES F. BYRNES, JR. — TRANSPORTATION CHIEF ENGINEER BUREAU OF ENGINEERING AND HIGHWAY OPERATIONS". Sheet 1 of 2 and 2 of 2, (39-90-2).
The above-described premises are conveyed subject to such rights and easements as appear of record.
The town of East Granby is located in the north central portion of Hartford County, approximately 16 miles north of the city of Hartford. It is accessed by two major state highways, State Route 187, which runs north and south from Hartford to Massachusetts, and State Route 20, which runs east and west from Interstate I-91 to Granby and Hartland. It is generally known today as a rural bedroom community for the industrial and commercial developments locally and in surrounding towns on the periphery of nearby Bradley International Airport, which is partially in East Granby. As of 1995, the median sale price for residential real estate in east Granby was $151,000.
The subject neighborhood is located on the eastern side of East Granby, near the airport and the industrial park portion of town. The immediate neighborhood is East Street between Route 20, the major highway into town from I-91, and Russell Road, a secondary road to the north leading into the airport and industrial parks. East Street connects to the north beyond Russell Road with other highways leading to Suffield. Parcels "A" and "B" consist of various subparcels which are best analyzed by their different uses at the time of taking.
At the time of taking, this portion of East Street had four residential dwelling lots, being known as Numbers 18, 24, 26 and 30 East Street. These were located on both sides of the two entrances to the Crystal Farms Subdivision, an approved subdivision, containing a total of 28 lots, inclusive of these adjoining four at both corner intersections of Crystal Drive, a horseshoe shaped street. All four subject lots fronted on East Street as well as on Crystal Drive. Water, sewer, electricity and telephone utilities are available at the site, but no site improvements existed on these four residential lots at the time of the taking. The road bed, however, had been staked out and excavated. The zoning classification for this subdivision is MFDR, Multi-family Designed Residence Zone, permitting among its uses planned single-family residential dwellings on individual lots. In the estimate of the Owner's CT Page 12735 appraiser, the highest and best use of this portion of the condemned property is its current development for single-family homes. With this conclusion, the court agrees. Additionally, the court concurs in his use of the sales comparison approach as appropriate to the valuation of these four residential lots before and after taking.
In his sales comparison analysis he observed that the subject four lots are small lots as part of a high-density residential subdivision. Typically in these high density subdivisions with smaller lots, the house and lot are sold together, as will be the case with Crystal Farms. He found as comparables five sales from the Ellison Street subdivision in Suffield and two sales from the Scott Lane subdivision in Windsor. All have sewer and water and are located similar to the subject, in rural residential areas located in like proximity to the airport with comparable access to 1-91 and the Hartford employment market. They ranged in price from $40,000 to $48,000 per lot, or $2.99 to $4.08 per square foot, varying primarily on lot sizes. These sales occurred from August of 1997 to August of 1998. They were all purchased for construction of a dwelling by a builder or by a builder in conjunction with a homeowner. With an adjustment for time of sale, the only factor he found necessary, he estimated that before the taking on March 27, 1998, each of the four subject residential lots was valued at $45,000, or $4.28 per square foot, for a total of $180,000.
Before the taking, these four lots ranged from 10,066 square feet to 11,005 square feet. The taking resulted in a loss of between 718 square feet and 823 square feet from the frontage of each of the subject lots, for a total loss of 3, 084 square feet. The depth of the East Street frontage has been reduced from between 9 and 12 feet, which makes the lots nonconforming as they are unable to meet the 50 feet setback requirement from East Street. A zoning variance application at the expense of the owner will be required before the commencement of construction. The taking also included a sight line easement of 1,933 square feet from a point on the taking line of 26 East Street about 24 feet from the south line of Crystal Drive to a depth of about 20 feet at the northwesterly corner of 30 East Street. This easement imposes the duty upon all owners of 26 and 30 East Street to keep the area free of all vegetation, including all trees, decorative plantings, shrubs, etc.
In his after taking valuation, the Owner's appraiser utilized the same comparable sales and the unit value conclusion of $45,000 per lot, which is $4.28 per square foot in the value for the remaining square feet in the four lots. The sight line easement for 30 East Street he valued at 10% of the per square foot value of $4.28, estimating that 90% of its ability to be used had been taken. In that fashion, his rounded value of the lots were: No. 18 East Street — $44,000; No. 24 East Street — CT Page 12736 $40,000; No. 26 East Street — $41,000; No. 30 East Street — $34,000; total value after taking — $159,000, rounded to $160,000. This value he further reduced for damages incurred by the requirement for a zoning variance in engineering costs of $1,171 and legal representation expenses of $2,000. Because of the proximity of the street to the lots, a four foot vinyl picket fence at $15 per linear foot for 400 feet would cost $6,000. Landscaping to create a site line barrier for the lots would cost $1,000. Finally, he estimated the loss in desirability for the lots because of their proximity to the road at $2,250 per lot, or $9,000. The resulting total of $19,171 he rounded to $20,000. Deducting this from $160,000, the four lots were valued after the taking at $140,000. After deducting this valuation from the market value before the taking of $180,000, he estimated the damages to these four lots from the taking of land and easements on March 27, 1998, to be $40,000.
The remainder of Parcel "A" taken on March 27, 1998, consists of two parts: (1) Lot 54-3-2 is 10.06 acres of Multi-Family Designed Residence zoned land on the east side of East Street adjoining No. 18 East Street on the north, and extending southerly 361.49 feet along the street frontage to the property adjoining on the south, with a maximum depth of 944 feet. It is irregular in shape and generally level with Kripes Brook running along its eastern boundary. The brook encompasses approximately six acres of wetlands, leaving 4.06 acres of land available for development. The land is level at street grade with no impediment to development.
(2) Lot 41C is Business zoned land of 16.6 acres on the west side of East Street and across from the first part. This property has 495.79 feet of frontage on East Street and 1,260 feet frontage on the north side of Route 20. It is irregular in shape and has approximately two acres of wetlands on its western end. The remaining parcel is generally level and well drained. The current use of both lots is rental for agricultural purposes. There are no site improvements on these properties, but water, sewer, electricity and telephone utilities are available. Lot 41C has a 20 foot wide drainage easement running northerly along East Street to a culvert that crosses under the street.
In the opinion of the Owner's appraiser, the highest and best use of the 10.06 acres of high density residential land of Lot 54-3-2 and of the 16.6 acres of commercial land of Lot 41C are those uses as allowed by zoning. With this conclusion, the court agrees.
The cost approach and income approach to the valuation of these properties are not appropriate. The court concurs in his use of the sales comparison approach to the valuation of these two separate parcels of land. Only three sales in the regional area surrounding East Granby CT Page 12737 during the period of the taking were found to be appropriate. Two were in Windsor and one is a portion of the subject property. All are multi-family zoned. No appropriate commercial zoned properties were identified, but the high-density residential zoning is appropriate for valuation of the commercial portion of the property based on its location in East Granby.
Sale 1 — 13.422 acres on Matianuck Avenue, Windsor, sold in April of 1996 for $348,100, which is $25,935 per acre. It was purchased subject to a zoning change to high-density residential and subdivision approval. The area is more densely populated and sewer and water are available. It is superior to the subject property.
Sale 2 — 14.33 acres on Merriman Road, Windsor, sold in March of 1996 for $175,000, or $12,212 per acre. This was also sold subject to approvals. It is a less dense zone than the subject, but it does have a higher lot yield than the subject. It is slightly inferior because of zoning density.
Sale 3 — 10.06 acres on East Street, East Granby, sold in March of 1996 for $137,500, which is $13,668 per acre. This is the east side of East Street portion of the subject property. It was sold in distress, and therefore considered inferior to the market value as of the appraisal date.
The comparable sales range in price per acre from $12,212 to $25,935. With adjustments for sewer, water, location, lot yield, lot zoning density, wetlands and distress sale factors pertaining to these comparables, he estimated a before taking value of $15,000 per acre for both pieces, or a total value for 26.66 acres of $399,900, rounded to $400,000.
As a result of the taking, there will be a loss of 3,253 square feet from the frontage of Parcel 54-3-2. the loss of use of the land for the drainage easement of 909 feet on the same parcel, and a loss of use of 501 square feet for the drainage easement on Parcel 41C. In addition, there is loss of access to both parcels resulting from the raising of the elevation of the highway above the existing grade of the parcels by approximately two feet. This creates an access problem for both properties which the owner will have to correct at his expense.
The highest and best use is not changed by the taking. As a result, the comparable sales unit value conclusion of $15,000 per acre remains for the reduced acreage of 9.89 acres in Parcel 54-3-2 and the original 16.6 acres of Parcel 41C. This results in a value of $396,900. The easements consume a total of 0.0323 acres of land that is rendered unusable to the CT Page 12738 owner. As a result, it is valued at 95% or $460. The access damage he determined by estimating the cost to cure by regrading the land to its previous level. The total cost for fill, top soil, grading and seeding he estimated at $9,100. The resulting after taking value of the property he estimated to be $387,340, rounded to $387,000. Based on this calculation, he determined the damages to the land and easements taken on March 27, 1998, from Parcels 54-3-2 and 41C to be $13,000.
Parcel "B" consists of 29.89 acres of vacant industrial zoned land on the west side of East Street with 598.46 feet of frontage and a maximum depth of 2, 175 feet. It is irregular in shape and generally at street level, with Sanborn Brook running along the western boundary of the land. The brook and associated wetlands encompass approximately 7.1 acres, leaving 22.79 acres of land available for development. There is a drainage easement for surface and subsurface waters from the land into and through a culvert running under East Street into and through a swale and drainage ditch extending easterly from the culvert through other lands and into Kripes Brook.
The highest and best uses of the property are those uses as allowed by zoning. The court agrees with this conclusion, The owner's appraiser found the sales comparison approach to value to be appropriate for this vacant land, and the court concurs in this. Three sales in East Granby and the surrounding region were utilized.
Sale 1 — 17.7 acres on Harvey Lane, Suftield, consisting of 7.24 acres, with a frontage of 450 feet, in Suffield, and 10.46 acres abutting in Windsor Locks with no other frontage, sold on January 11, 1999, for $600,000, or $33,898 per acre. The site has been approved for a 4,500 square feet office and 45,000 square feet garage with outside storage of construction equipment and building materials.
Sale 2 — 15.45 acres with frontage of 894.22 feet on Strong Road, and 703.57 feet on John Fitch Boulevard, Route 5, South Windsor, sold on January 15, 1998, for $350,000, or $22,654 per acre. The grantor obtained this property through a foreclosure. The grantee improved the site with a large industrial building.
Sale 3 — 11.01 acres of vacant industrial land, being two abutting lots at 32 and 38 Kripes Road, East Granby, with a frontage of 787 feet on Kripes Road and 669 feet on Nicholson Road, sold on November 7, 1997, for $207,500, or $18,847 per acre. A brook at the northeast corner creates less than an acre of wetlands. A utility easement runs through the center of both parcels.
The comparable sales range in price per acre from $18,847 to $33,898. CT Page 12739 They are all superior to the subject because of location, availability of sewer and water, and wetlands, As a result, the subject was valued before taking at $17,000 per acre, for a total value of $508,130, rounded to $510,000.
As a result of the taking, there will be a loss of 4,972 square feet, reducing the parcel to 29.77 acres. The drainage easement occupies 400 square feet of land area and is not suitable for use because of riprap and concrete splash plates. The highest and best use is not changed by the taking. As a result, the unit value of $17,000 per acre remains the same for the 29.77 acres, for a total of $506,090. The easement area he valued at $148.58, rounded to $150. The net value of the whole, therefore, is $505,940, rounded to $506,000. Based on this determination, he estimated the damages from the taking of the land and easement to be $4,000.
Unlike the owner's appraiser, the State's appraiser did not follow the format of the takings of Parcels "A" and "B" in this proceeding. The introductory to her land appraisal report states: "The subject file consists of two taking maps that affect a total of five lots that are all on assessor's map #12. They are identified on assessor's map #12 as lots 54-3-2, 53-20, 41 C, 42B, and 43. Lot ##'s 54-3-2 and 53-20 are contiguous parcels that are located on the East side of East Street and are on taking map 1 of 2. For appraisal purposes they will be treated as one parcel and will be referred to as PARCEL A as they are on the taldng map. Lot 4's 41C, 42B and 43 are contiguous parcels that are located on the West side of East Street and are on both taking maps 1 of 2 and 2 of 2. For appraisal purposes they will be treated as one parcel and will be referred to as PARCEL B as they are on the taking maps. A separate before and after Land Appraisal Report was prepared for each of the two parcels." Lots 41C, 42B and 43 are contiguous in the rear only, and not on the East Street frontage. Lot 42, a "flag lot" with very little street frontage immediately bordering Lot 41C, was not a part of the taking, and is not relevant to this proceeding.
PARCEL A is located on the east side of East Street and is broken down into two lots. Lot #1 is designated as lot 54-3-2. It consists of 10.06 acres of vacant land that is zoned MFDR. There was an approval by the planning and zoning commission on March 5, 1990, for a 26 unit condominium project. The approval has since expired and the land remains vacant. Lot #2 is designated on the assessor's map as Lot 53-20. It is 11.9 acres of vacant land of which 5.8 acres is designated swampland according to the assessor's card. The zone was changed from agricultural to MFDR. There is an active approval for a 28 lot single-family subdivision. Water and sewer were being installed. The present use of the properties was found to be their highest and best use. This appraiser also found the sales CT Page 12740 comparison approach to value to be appropriate. Three comparable sales were found in the neighboring town of Granby:
Sale 1 — 211 Simsbury Road, Granby, consisting of 38.17 residential acres sold on October 17, 1997, for $350,000. Sale 2 — 57 Quarry Road, Granby, consisting of 13.2 residential acres sold on August 19, 1997, for $150,000. Sale 3 — 84 Donahue Road, Granby, consisting of 75.55 residential acres sold on July 23, 1997, for $385,000. All sales were adjusted for site size differences, and sale 3 because it did not have subdivision approval in place at the time of sale. After these adjustments, the estimated before value of Parcel A is $0.25 per square foot times 952,222 square feet, or $238,055.
The taking of PARCEL A consisted of the loss of fee to 7,706 square feet, a drainage right of way of 909 square feet, the right to install sedimentation control of 786 linear feet, an easement for sight line of 1,933 square feet, and the right to grade 1,318 square feet. The taking line cuts across four lots of the proposed subdivision at their frontage on East Street, reducing the required setback of 50 feet. The appraisal assumes that all needed variances will be granted, but the necessary cost, fees and expense were not considered. Because a portion of the drainage right way is an existing drainage area, 50% of the fee value is applied to the drainage area. Also, because the sight line easement is within the designated subdivision sight line area, 75% of the fee is applied to the sight line.
The same sales and the same unit value that were used in the before taking valuation were deemed appropriate for the after taking estimate. This computation was as follows: 941,674 square feet unencumbered times $0.25 = $235,419; plus 1,933 square feet sight line easement times $0.25 times 25% = $121; plus 909 square feet drainage right of way times $0.25 times 50% = $114; total after taking value $235,654, rounded to $235,655. Damages to PARCEL A from the taking were thus calculated to be $2,400.
As noted earlier, the land designated by the State's appraiser as PARCEL B consists of three properties that are contiguous in the rear only, and not on the street frontage, containing a total of 65.05 acres:
(1) Lot 41C consists of 16.65 acres of vacant land that is zoned B (Business), of which 6.72 acres are designated swampland. This lot has 1264 feet of frontage on Route 20 and 496 feet of frontage on East Street;
(2) Lot 42B, a rear "flag lot", consists of 18.1 acres of vacant land, of which 6 acres are designated woodland and 3 acres are designated as CT Page 12741 swampland; its zone was changed from Business and Agriculture to ER (Elderly Housing) in May, 1990; and
(3) Lot 43 consists of 30.3 acres of vacant land, 10 acres of which are designated swampland; in April, 1996, its zone was changed from Agriculture to Industrial.
The State's appraiser concluded: "The highest and best use of the subject property is for elderly housing development for the lot in that zone and a vacant interim use of the commercial and industrial lots until such time that demand (for such uses) increases." The court finds this conclusion insufficient. Lot 42B, upon which she relies, was not a part of this taking, and it is not relevant to the proceeding now before the court.
The same comparable sales utilized in the valuations of PARCEL A were again relied upon for PARCEL B. In the before taking analysis, adjustments were made for size, frontage on East Street and Route 20, and potential for future business and industrial development, indicating the value of PARCEL B to be $0.17 per square foot times 2,833,578 square feet or $481,708, say $481,700.
The taking of PARCEL B consisted of the loss of fee to 4,972 square feet, drainage rights of way of 399 and 501 square feet, the right to install sedimentation control of 209 and 103 square feet. The drainage areas are calculated at 50% of fee. After making adjustments for any differences from the subject in the three vacant comparable sales previously noted, and in unidentified "available listings in the immediate adjacent area," an indicated unit value of $0.17 per square foot was estimated for the subject property after the taking. Damages were computed as follows: 2,827,707 square feet unencumbered times $0.17 = $480,710; plus 900 square feet drainage right times $0.17 times 50% = $77; minus contributory value of trees within the taking = $1,000; total after taking value = $479,787, say $479,800. Damages to PARCEL B from the taking were thus calculated to be $1,900. Total damages for the takings in PARCEL A and PARCEL B are $4,300.
"When only a part of a tract is taken for the public use, "just compensation' includes recovery for the part taken and recovery for any damages visited upon the remainder which result from the taking. Bowenv. Ives, 171 Conn. 231, 238, 368 A.2d 82; Meriden v. HighwayCommissioner, 169 Conn. 655, 659, 363 A.2d 1094. "The ordinary rule for measuring damages where a portion of a tract of land is taken is to determine the difference between the market value of the whole tract as it lay before the taking and the market value of what remained of it thereafter, taking into consideration the changes contemplated in the CT Page 12742 improvement and those which are so possible of occurrence in the future that they may reasonably be held to affect market value.' Lefebrve v.Cox, 129 Conn. 262, 265, 28 A.2d 5 [1942]. The court should consider any and all damages which will foreseeably follow from the proper consideration of the project, including any damage to the remainder which is a necessary, natural and proximate result of the taking. Budney v.Ives, 156 Conn. 83, 88, 239 A.2d 842." D'Addario v. Commissioner ofTransportation, 172 Conn. 182, 184-85, 374 A.2d 163 (1976); Darling v.Waterford, 7 Conn. App. 485, 486 (1986).
Under our law, a judge trial referee sitting as a court on appeals in condemnation cases is more than just a trier of fact or an arbitrator of differing opinions of witnesses. He is charged by the General Statutes and the decisions of our courts with the duty of making an independent determination of value and fair compensation in the light of all the circumstances, the evidence, his general knowledge and his viewing of the premises. Minicucci v. Commissioner of Transportation, 211 Conn. 382, 388
(1989); Birnbaum v. Ives, 163 Conn. 12, 21-22 (1972); Feigenbaum v.Waterbury, 20 Conn. App. 148, 153 (1989). It is his task to reach a result that gives the plaintiffs, as nearly as possible, a fair equivalent in money as just compensation for the property taken. Mathisv. Redevelopment Agency, 165 Conn. 622, 623 (1973); Feigenhaum v.Waterbury, supra, 153-54.
The elements of the owner's damage due to the taking of March 27, 1998, are: (1) Loss of fee to 7,706 square feet of residential zoned frontage on the east side of East Street, including the reduction of 3,084 square feet of side yard of four building lots in Crystal Farms subdivision, being Assessor's Parcel 53-20, known as Nos. 18, 24, 26 and 30 East Street, and resulting in the necessity of the Owner to obtain a future variance from the required 50 feet setback, thereby incurring necessary application, engineering and attorney's fees for obtaining a zoning variance;
(2) A full and perpetual sight line easement within an area of 1,933 square feet of additional street setback of No. 30 East Street for traffic safety;
(3) Loss of five maple trees within the taking and easement areas;
(4) Access damage to Parcel 54-3-2 in restoration of grade to its previous level;
(5) Loss of use of drainage rights of way in Parcels 54-3-2 and 41C totalling 1,410 square feet; CT Page 12743
(6) Loss of fee to 4,927 square feet of industrial zoned land fronting on the west side of East Street, being Parcel 43;
(7) Loss of use of drainage right of way in Parcel 43 containing 399 square feet; and
(8) Loss of oak, elm, maple and cherry trees within taking area of Parcel 43.
After viewing the site of the subject properties, and after giving due consideration to the opinions of expert witnesses and to a knowledge of the elements that establish value, I find that the before taking value of Parcel "A" was $580,000, and that the after taking value is $548,200, resulting in damages of $31,800; and that the before taking value of Parcel "B" was $510,000, and that the after taking value is $506,900, resulting in damages of $3,100. Total damages, therefore, are assessed at $34,900.
Judgment may enter for the appellant in the amount of $34,900, being $31,525 additional to the amount deposited with the clerk of court, with interest on such excess at 8% per annum from the date of taking on March 27, 1998, to the date of payment, together with costs and a reasonable appraisal fee of $3,000.
 William C. Bieluch. Judge Trial Referee